*769 OPINION OF THE COURT
John L. DeMarco, J.
This matter was tried to the court in a bench trial. The defendant is charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) and (3). The following facts were adduced at trial. On July 10, 2004, at about 1:47 a.m., the defendant was stopped at a sobriety checkpoint on Empire Boulevard in Irondequoit. Officer Lape, the investigating officer,[1] noticed a strong odor of an alcoholic beverage coming from the defendant, observed that the defendant had glassy eyes, and testified that the defendant had admitted to drinking earlier in the night. Officer Lape administered three field sobriety tests: the finger-to-nose test, the walk-and-turn test, and the one-leg stand test, all of which the officer opined the defendant failed. The defendant was taken into custody, and at about 2:20 a.m. he provided a breath sample that was analyzed by a Datamaster, serial number 200204. This test found the defendant’s blood alcohol content to be 0.08%.
In order to establish the foundation for the admission of this test result at trial (see People v Freeland, 68 NY2d 699, 700 [1986]), the prosecution offered into evidence (1) the record of inspection, maintenance, and calibration prepared by the New York Division of Criminal Justice Services for the Datamaster used in this case (hereafter referred to as the calibration certification) and (2) a certification of analysis of the 0.10% Breath Alcohol Simulator Solution prepared by the New York State Police Forensic Investigation Center for reference solution lot number 04040 (hereafter referred to as the simulator solution certification).[2] The calibration certification is signed by Kaylie Laverdure, technician, and states that on April 15, 2004, she performed a series of tests on the Datamaster that showed that it was “reliable for the determination of ethyl alcohol in the blood by analysis of the breath” under the standards promulgated by the New York Commissioner of Health. The simulator solution certification is signed by Harry K. Garber, forensic sci *770 entist III, and Keith K. Coonrod, director of toxicology and drug chemistry. It states that “[s]imulator solution lot number 04040 has been certified to contain the appropriate concentration of ethyl alcohol and is hereby approved for use. When this reference solution is used with a properly operating breath testing instrument, the solution will provide a value of 0.10% at 34° C.” The prosecution has also produced affidavits for each certificate in compliance with CPLR 4518.
Defendant interposed hearsay and Confrontation Clause objections to the admission of these documents, and based on their alleged inadmissibility, moved for a trial order of dismissal at the conclusion of the prosecution’s case. This court reserved on those applications. The court now grants the trial order of dismissal on the Vehicle and Traffic Law § 1192 (2) count and finds the defendant guilty of Vehicle and Traffic Law § 1192 (1).
I. Vehicle and Traffic Law § 1192 (2)
A. Hearsay
Defendant’s hearsay objection is without merit. The Court of Appeals and the Fourth Department have held that calibration documents prepared by state agencies in the regular course of business for breath testing devices are admissible under the business records exception. (People v Mertz, 68 NY2d 136, 147-148 [1986]; People v Dailey, 260 AD2d 81, 83 [4th Dept 1999].) Defendant has offered no evidence that the documents were not prepared in the usual course of business, that it was not the agencies’ regular course of business to make the documents, or that the records were not made at or near the time of the tests recorded therein. They therefore fall under the business records exception to the hearsay rule.
For his argument to the contrary, defendant relies on People v Rogers (8 AD3d 888 [3d Dept 2004]). Rogers was a rape case in which the police had requested a blood test from the victim to test her blood alcohol level, which was relevant to her capability to consent. The trial court admitted the report containing the results of this test as a business record, which the Rogers court held was error. The document was prepared for law enforcement for the purpose of prosecution, the Court noted. “Documents prepared for litigation lack the indicia of reliability necessary to invoke the business records exception to the hearsay rule.” (Rogers, 8 AD3d at 891.)
Rogers is inapplicable in this case. At issue here is not a document showing the result of a test conducted as a part of a criminal investigation, but a routine certification of testing *771 equipment conducted in the ordinary course of business of two state agencies. But even if Rogers were analogous, this court is bound by the rulings of the Court of Appeals in Mertz and the Fourth Department in Dailey. Defendant’s hearsay objection is overruled.
B. Confrontation Clause
A more difficult question is presented by defendant’s Confrontation Clause objection. The Sixth Amendment to the United States Constitution guarantees that, “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.” In the recent case of Crawford v Washington (541 US 36 [2004]), the United States Supreme Court significantly shifted the analysis of claims under the Confrontation Clause.
1. The New Crawford Confrontation Clause Analysis
Previously, an out-of-court statement could be admitted in a criminal trial if it had “adequate ‘indicia of reliability.’ ” (Ohio v Roberts, 448 US 56, 66 [1980].) This was demonstrated by a showing that the statement (1) fell within a “firmly rooted hearsay exception,” or (2) that it bore “particularized guarantees of trustworthiness.” (Id.) After an extensive historical analysis centering on the framers’ concern with the potential for the prosecutorial abuse inherent in allowing the admission of out-of-court statements against the defendant, the Crawford court overruled Roberts. While the Confrontation Clause’s “ultimate goal is to ensure reliability of evidence,” the Court ruled, the clause provides “a procedural rather than a substantive guarantee.” (Crawford, 541 US at 61.) Thus, the Court held, the Confrontation Clause commands “not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” (Id.)
Under Crawford, the criminal defendant’s right to in-court confrontation only extends to evidence that is “testimonial” in nature. (Id. at 51-53, 68.) Testimonial evidence that is not given by a live witness at trial may only be admitted consistent with the Confrontation Clause if the declarant is unavailable at the time of trial and the defendant had an adequate opportunity to cross-examine. (Id. at 53-56, 68.)
The question, then, under Crawford’s understanding of the Confrontation Clause, is what evidence is “testimonial.” The Court refused to spell out a comprehensive definition, but gave several potential formulations:
*772 “[M] at erial such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . ; [and] extra-judicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . ; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” (Crawford, 541 US at 51-52 [internal quotation marks and citations omitted].)
What these formulations all share is that the declarant understand that his or her statement will be used in a criminal investigation or prosecution. This fits with the specific holding in Crawford: the Court ruled that the admission of a taped statement that the defendant’s wife gave to the police while investigating a homicide violated the Confrontation Clause. It is less certain from Crawford whether the declarant’s understanding as to the purpose of the statement should be determined through an objective or subjective test. It would seem that at a minimum, however, where such an understanding is objectively reasonable from the circumstances, the statement should be regarded as testimonial.
2. Application of Crawford to Chemical Testing Reports
As noted above, the challenged documents are admissible as business records in New York, and the Crawford court suggested that the Confrontation Clause does not vitiate the business records exception to the hearsay rule. (See Crawford, 541 US at 56; see also id. at 76 [Rehnquist, Ch. J., concurring].) In doing so, however, it was careful to state that its historical review of common law at the time of the adoption of the Bill of Rights provided “scant evidence that [hearsay] exceptions were invoked to admit testimonial statements against the accused in a criminal case.” (Id. at 56.) Further, the Crawford majority explicitly rejected the concurrence’s position that the testimonial nature of an out-of-court statement “does nothing to undermine the wisdom” of hearsay exceptions. (Id. at 56 n 7.) Rather, the Court held, “Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse.” (Id.) Thus, Crawford appears to indicate that business records are subject to the same confrontation demands as other out-of-court statements.
*773 Business records are admissible as an exception to the hearsay rule because they were prepared as a matter of routine for a serious activity like the conduct of a business. This gives them sufficient degree of reliability to be used at trial, even though the statements in them are not subject to cross-examination. (See generally People v Kennedy, 68 NY2d 569, 578-580 [1986].) In general, this poses no Confrontation Clause problem under Crawford: the statements are not testimonial because they were not made under circumstances in which the declarant should understand they would be made at trial.
The calibration and simulator solution certifications pose a difficulty because they satisfy both of these tests. They clearly are produced in the regular course of business of the New York State Police Forensic Investigation Center and New York State Division of Criminal Justice Services, and are admissible under CPLR 4518. However, both documents refer to breath testing devices on their face, and Kaylie Laverdure, Harry K. Garber, and Keith K. Coonrod must have known that these reports would be used in criminal prosecutions. It is difficult to conceive of any purpose in preparing these documents other than for use in DWI cases.
As noted above, however, Crawford is inconsistent with the proposition that satisfying the business records exception is sufficient to overcome the requirements of the Confrontation Clause for testimonial evidence. Therefore, because the calibration and simulator solution documents are testimonial in nature, they cannot be admitted under the Confrontation Clause.
This ruling is consistent with several recent decisions. In the Florida District Court of Appeal in the case of Shiver v State (900 So 2d 615 [2005]), the prosecution sought to admit a “breath test affidavit” in a DWI case to show, among other things, “the date of performance of the most recent required maintenance.” (Id. at 617.) This was required to show that the breath test device was not malfunctioning, and it was an element the statute required to be proven for conviction. (Id.)
The court found that the affidavit was inadmissible under Crawford. “It contained statements one would reasonably expect to be used prosecutorially,” and in fact “the only reason the affidavit was prepared was for admission at trial.” (Id. at 618.) Because the criminal defendant was unable to challenge the testimonial evidence regarding the maintenance of the *774 instrument, his Confrontation Clause rights were violated. (Id.) The court reversed the conviction. (Id.)
The Third Department held similarly with respect to a blood test in People v Rogers, discussed above. In addition to finding that the blood test result report was not a business record, the Rogers court held that the. report’s admission violated the defendant’s Confrontation Clause rights under Crawford. (Rogers, 8 AD3d at 891-892.) “Because the test was initiated by the prosecution and generated by the desire to discover evidence against the defendant, the results were testimonial,” the Court held. (Id. at 891.) Thus, the report was inadmissible because the defendant was unable to cross-examine the person who prepared it. (Id. at 892.)
On the other hand, the New Mexico Supreme Court found that the trial court erroneously refused to admit a blood alcohol report in support of a DWI prosecution in State v Dedman (136 NM 561, —, 102 P3d 628, 636 [2004]). The report had been prepared by the Scientific Laboratory Division of the New Mexico Department of Health, which the appellate court ruled admissible. It noted that the report was prepared by an employee of the Department of Health, not law enforcement personnel, and though it was prepared for trial, “the process is routine, non-adversarial, and made to ensure an accurate measurement.” (Dedman, 136 NM at —, 102 P3d at 636.) “While a government officer prepared the report,” the court stated, “she is not producing testimony for trial.” (Dedman, 136 NM at —, 102 P3d at 636.) The report was unlike the evidence the Crawford court had said was clearly testimonial — preliminary hearing or grand jury testimony, or police interrogations — and therefore the report was nontestimonial, Dedman held. (Dedman, 136 NM at —, 102 P3d at 636.)
Shiver and Rogers represent a more faithful application of Crawford than Dedman. As explained above, what matters under the Crawford analysis is that the declarant knows that the statement will be used in a prosecution. Once this test is satisfied, the Confrontation Clause is implicated, and the defendant is constitutionally entitled to cross-examine the declarant. Dedman's emphasis on the routine and nonadversarial nature of the test is the very type of substantive reliability concerns rejected by Crawford in overturning Ohio v Roberts. Again, Crawford held that the Confrontation Clause’s guarantee is procedural — entitling the defendant to cross-examination— rather than substantive in nature. (Crawford, 541 US at 61.)
*775 The court is mindful of the practical concerns entailed in having the personnel who performed the calibration and simulator solution analyses testify at each DWI trial in New York. But as the recent sentencing guideline cases show (see United States v Booker, 543 US —, 125 S Ct 738 [2005]; Blakely v Washington, 542 US 296 [2004]), the current United State Supreme Court’s formalistic approach to interpreting the guarantees of the Sixth Amendment provides little room for accommodation of the pragmatic issues its decisions might raise in the day-to-day administration of criminal justice. Certainly Crawford, a decision in which seven of nine Justices joined, shows no departure from this trend.
Further, the truth-seeking value of cross-examination in this context is not merely theoretical. Substantial problems with DWI testing in this state were uncovered in the 1990s, and there have also been recent problems even with reliability of the FBI laboratory’s analyses. Subjecting the persons who conduct these calibration tests to the “crucible of cross-examination” will help ensure the reliability of their work and protect the integrity of the judicial system by avoiding convictions based on faulty breath test results.
For these reasons, the defendant’s objections to calibration and simulator solution certifications are sustained, and they are not received into evidence. The prosecution has therefore failed to establish the reliability of the chemical test administered on the defendant. As such, it has failed to put forth trial evidence that is legally sufficient to establish the offense charged, a violation of Vehicle and Traffic Law § 1192 (2), therefore that charge is dismissed. (CPL 290.10; see People v Freeland, 68 NY2d 699, 700 [1986].)
II. Vehicle and Traffic Law § 1192 (3)
Vehicle and Traffic Law § 1192 (3) states that “[n]o person shall operate a motor vehicle while in an intoxicated condition.” Vehicle and Traffic Law § 1192 (1) states that “[n]o person shall operate a motor vehicle while the person’s ability to operate such motor vehicle is impaired by the consumption of alcohol.” People v Cruz (48 NY2d 419 [1979]) dictates the standard to be employed when determining whether proof constitutes intoxication. The prosecution failed to prove that the defendant violated section 1192 (3). The defendant was stopped at a roadside sobriety checkpoint while operating his car, with his fiancée and daughter as passengers. There was no testimony as to erratic operation. The defendant had an odor of alcoholic beverage *776 about him and glassy eyes but was otherwise orderly and cooperative. The defendant was asked to perform three roadside field sobriety tests, each with multiple components, some of which were passed and others which were not. For example, the defendant passed those portions of the sobriety tests that required balance and turning. However, the defendant’s stated reasons for failing the walk-and-turn test — that it was dark under the bridge and he was distracted by the police lights — are not convincing. Indeed, when asked to explain how the flashing lights might have impaired his ability in performing this test, he was unable to do so. Further, the defendant conceded at trial that he did “disastrously” on the one-leg stand test, and although there was inconsistent testimony as to how the test was administered, he had no physical conditions that would have prevented him from doing it properly. The defendant requested the court to consider the lesser included offense of Vehicle and Traffic Law § 1192 (1). There is no reasonable question that the defendant was driving while ability impaired at the date and time in question, and is therefore guilty of violating Vehicle and Traffic Law § 1192 (1).

. The defendant testified that a different unidentified policeman, other than Officer Lape conducted the investigation. I find Officer Lape’s testimony more credible on this point.

. Although the officer who administered the breath test testified that he followed the Department of Health regulations in doing so, he did not explicitly testify that he checked the machine using the simulator solution. However, the defendant did not object to the sufficiency of the People’s case on this issue, and the court assumes without deciding that this general testimony is sufficient.