OPINION OF THE COURT
Leonard G. Tilney, Jr., J.
This matter was a bench trial held September 6, 2005 after defendant waived her right to a jury and signed the appropriate waiver (court exhibit 1). The defendant is charged with driving while intoxicated (DWI) in violation of Vehicle and Traffic Law § 1192 (2) and (3), as well as speeding 72 miles per hour (mph) in a 55 mph zone and failure to keep right in violation of Vehicle and Traffic Law § 1180 (b) and § 1120 (a), respectively. The following facts were introduced at trial:
On July 8, 2005 at approximately 2:00 a.m., the defendant was driving northbound on State Route 78 (South Transit Road) in the Town of Lockport and was stopped by New York State Trooper Charles R. Richardson. Richardson was on routine patrol with Trooper Middlebrooks when the defendant pulled out of Jimmy B’s, a local bar, and narrowly missed being broadsided by a tractor trailer truck which was proceeding in the southbound lane of South Transit Road. Trooper Richardson followed the defendant, who was operating her car in the center turn lane of the five-lane state highway. He paced her car with his speedometer and also estimated her speed at 72 mph in a posted 55 mph zone. Defendant’s car was weaving in and out of traffic and was eventually stopped for speeding and failure to keep right. Defendant responded to the lights and siren of the New York State Police car and stopped. While Richardson asked the defendant for her license and registration, he noticed a strong odor of alcohol from the car. He spoke with her and she told him she was involved in a softball game at Jimmy B’s and had consumed eight beers. Her words were slurred, he noticed her eyes were watery and she had confused speech. He administered three field sobriety tests to determine if she was intoxicated. Those tests which were administered were the walk and turn test, one-leg stand test and alphabet recitation. The defendant was unable to complete the alphabet and stopped at the letter “o,” thus failing that test. Likewise, she was unable to do the nine-step stop and turn test, but rather took 12 steps and then walked to her car, but not in a straight line. Richardson indicated defendant likewise failed that test. Finally, she simply could not do the one-leg stand test, even though Richardson *952 explained it to her in detail. He gave her a breath screening test on site, which she failed. When Richardson advised her she was under arrest for driving while intoxicated, she became upset and distraught, so much so that she had to be handcuffed. The defendant was taken into custody and transported to the New York State Police barracks and given her breathalyzer and Miranda warnings. Defendant provided a breath test sample, which was analyzed on an ALCOTEST 7110MKIIIC instrument. The test was performed well within a two-hour time period and was completed at approximately 2:45 a.m. Richardson described the prescribed manner in which he gave the test, as well as his observations of the defendant. She consented to the test. The test instrument provided the readout that defendant’s blood alcohol content (B.A.C.) was at .21%.
While at the station, defendant admitted, that she had consumed 18 beers, not 8. Richardson has handled over 120 DWI cases and is a certified breath test operator. He has also determined intoxication of people both on the job and socially. He knows there are varying levels of intoxication and, in his opinion, defendant was intoxicated and unable to drive. Over continuing defense objections and a motion to grant a trial order of dismissal of the section 1192 (2) count, the trial continued and the court allowed into evidence, subject to this decision, the various exhibits offered by the People.
In order to establish the foundation for the admission of the breath test result at trial (see People v Freeland, 68 NY2d 699, 700 [1986]), the prosecution offered into evidence the record of calibration/maintenance and the certification of analysis of the breath alcohol simulator solution (exhibits 1A, 2A). The prosecution also produced certifications in compliance with CPLR 4540 and 4518.
The defendant interposed a Confrontation Clause objection to the admission of these documents in that admission would deny an opportunity to cross-examine the technician who inspected, calibrated and maintained the breath test machine and also the individual who tested the simulator solution pursuant to the authority of Crawford v Washington (541 US 36 [2004]).
Decision
This court has before it for the first time the issue of conflict between the federal constitutional right of confrontation as defined in Crawford v Washington (supra) and the statutory exception to the hearsay rule regarding governmental docu *953 ments contained, in CPLR 4518 (c). Prior to Crawford, the Supreme Court of the United States indicated that the prosecution could introduce an out-of-court, un-cross-examined statement made by a nonappearing and unavailable declarant if the statement fell within the hearsay exception that was firmly rooted in American jurisprudence or the statement bore particular guarantees of trustworthiness. (See Ohio v Roberts, 448 US 56 [1980].) The United States Supreme Court now indicates that all “testimonial” statements made by nontestifying declarants are inadmissible under the Confrontation Clause regardless of whether they fall within a “firmly rooted hearsay exception” or bear “particularized guarantees of trustworthiness,” unless the declarant is unavailable to testify and the defendant had an opportunity to cross-examine at the time the prior statement was made (541 US at 60). The key issue for this court to determine is whether or not a proper nontestimonial basis (i.e., certifications of Inspector Gerald M. Zeosky [exhibits 1, 2]) exists for the admission of (1) the record of calibration/ maintenance by Stephen D. Berry (exhibit 2a) of the breath test instrument (ALCOTEST 7110MKIIIC No. ARLM-0209) used to produce the B.A.C. .21% reading for the defendant, and (2) the analysis of the breath alcohol simulator solution in lot No. 05010 by Keith R. Coonrod (exhibit la) used as a test sample with the ALCOTEST instrument. Crawford itself indicates that business records will generally be nontestimonial as opposed to testimonial materials like affidavits, depositions, statements, confessions or prior testimony.
Accordingly, business records under CPLR 4518 (a) should still be entered into evidence. For example, medical records of a victim which contain hearsay statements are admissible under the business records exception as long as they are germane to the patient’s subsequent medical treatment and diagnosis (see People v Bailey, 252 AD2d 815 [1998], lv denied 92 NY2d 922 [1998]). Thus, a sexual assault information sheet has a dual purpose of investigation and treatment of the victim’s potential physical and psychological injuries. Because the history is germane to treatment, it falls within the traditional business records exception and the hearsay would, therefore, be admissible. Likewise, pursuant to CPLR 4518 (c), it would follow that governmental records, such as birth certificates, death certificates, autopsy reports and recording records (deeds, mortgages, etc.) would be admissible because they are not made for litigation.
*954 The Supreme Court enumerated three possible definitions of “testimonial” statements: (1) “material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially”; (2) extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confession”; and (3) “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” (Crawford, 541 US at 51-52.)
Obviously, the certification process for the business records/ governmental records (CPLR 4518) is a statutory hearsay exception. But the true questions Crawford asks are: Were the present calibration/maintenance record, as well as the analysis of the simulator solution and the certifications here made at the direction of the People to be used to prosecute this defendant? Do parts of the breath test or simulator solution certifications constitute testimonial hearsay evidence? Do they contain statements one would reasonably expect to be used prosecutorially, and were they made under circumstances which would lead an objective witness to reasonably believe the statements would be available for trial? Was admission at trial the only reason the certifications were prepared? Specifically, do the certifications contain testimonial evidence regarding when the required calibration/maintenance of the instrument was performed or the simulator solution was analyzed? This information is crucial because the admissibility of defendant’s breath test result (exhibit 5) was dependent upon the instrument having met the said requirements which, in turn, was dependent upon timely and proper calibration/maintenance and comparison with a prior tested ampoule containing simulator solution.
Defense argues that since Trooper Richardson did not perform the required calibration/maintenance or analysis, he was not qualified to testify as to whether the breathalyzer instrument test results met the required predicates for introduction into evidence. Because the defendant is unable to challenge the accuracy of the instrument or the test ampoules of simulator solution by the constitutionally mandated method of cross-examination of the person who performed the calibration/ maintenance or analysis, introduction of the certification violates defendant’s right to confront witnesses. The People urge the analysis of the simulator solution and record of *955 calibration/maintenance are simply governmental records kept by the New York State Police, which have been properly certified pursuant to CPLR 4540 and are admissible under CPLR 4518 (c).
Civil Practice Law and Rules § 4518, which codified the New York business records exception to the hearsay rule, is applicable to both civil and criminal cases. (People v Cratsley, 86 NY2d 81, 89 [1995]; People v Howard, 79 AD2d 1064, 1064 [3d Dept 1981], citing People v Foster, 27 NY2d 47, 52 [1970].) Section 4518 (a) provides, in pertinent part, as follows:
“Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of that act, transaction, occurrence or event, if the judge finds that it was made in the regular course of any business and that it was the regular course of such business to make it, at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter.”
The three foundation requirements of CPLR 4518 were summarized by the Court of Appeals in Cratsley:
“First, the record must be made in the regular course of business—reflecting a routine, regularly conducted business activity, needed and relied on in the performance of the functions of the business. Second, it must be the regular course of business to make the record—in other words, the record was made pursuant to established procedures for the routine, habitual, systematic making of such a record. Finally, the record must have been made at the time of the act, transaction, occurrence or event, or within a reasonable time thereafter, assuring that the recollection is fairly accurate and the entries routinely made.” (86 NY2d at 89.)
If the New York State Police documents are business/ governmental records under CPLR 4518 (a) and (c), then they are admissible (People v Mertz, 68 NY2d 136, 147-148 [1986]; People v Dailey, 260 AD2d 81, 83 [4th Dept 1999]). If the documents are “testimonial” in nature, they are not admissible (Crawford, supra). The analysis of the alcohol simulator solution (exhibit la) shows it is signed by Keith K. Coonrod, director of toxicology and drug chemistry, and Raymond M. Beattie III, senior laboratory technician toxicology, both from the New *956 York State Police Forensic Investigation Center and dated February 24, 2005. The certification by Inspector Gerald M. Zeosky, director (exhibit 1), is dated February 28, 2005. Likewise, the record of calibration/maintenance of the breath test instrument (exhibit 2a) is signed by Stephen D. Berry, technician, at the New York State Police Laboratory on June 14, 2005. Inspector Zeosky certifies to the report on June 24, 2005 (exhibit 2).
These records were made routinely and are needed and relied on by the New York State Police to conduct law enforcement. The records were made pursuant to protocol in a systematic procedure. The certifications were made within days of the reports and the reports were made the day of testing. CPLR 4540 mandates the certification. Statutory provisions, case law, or New York State Police rules and regulations mandate the testing and reports. These documents are not affidavits and were made before the July 8, 2005 arrest of the defendant. They are not testimonial nor specifically made for the prosecution of this case. This court is aware of recent cases to the contrary (People v Orpin, 8 Misc 3d 768 [Irondequoit Just Ct 2005]; People v Rogers, 8 AD3d 888 [3d Dept 2004]) and in other jurisdictions (Shiver v State of Fla., 900 So 2d 615 [Fla App, Mar. 8, 2005]). This court is not bound by Orpin. Rogers and Shiver are distinguishable. In Rogers, a rape victim’s blood test showing intoxication was used to disprove the defense of consent. The report was generated by private laboratory at the request of law enforcement and prepared specifically for litigation purposes. Certainly, the lab technician is necessary for cross-examination, but is the person who tested the microscope or machine used by the technician necessary? Florida’s procedure in Shiver allowed an admission of the breathalyzer test results by way of affidavit. Here, Trooper Richardson was present to be examined to the fullest on the procedure used to garner Ms. Krueger’s breath and her B.A.C. (See People v Uruburu, 169 AD2d 20 [4th Dept 1991]). The recent Fourth Department case of People v Pacer (21 AD3d 192 [2005]) is not contrary. There, in a prosecution for aggravated unlicensed operation of a motor vehicle in the first degree, Crawford was violated because the document submitted was an affidavit prepared for that specific prosecution, created after arrest, and at the request of the People to establish an element (notice received by defendant) of the crime. It was clearly testimonial evidence from a nonappearing witness. The certification of analysis of breath alcohol simulator solution and the *957 record of calibration/maintenance herein are held to be nontestimonial hearsay which can be entered into evidence pursuant to the statutory exception (CPLR 4815 [a], [c]) to the hearsay rule. Accordingly, the breath test result (exhibit 5) showing defendant’s B.A.C. reading to be .21% is admissible. The motion for a trial order of dismissal is denied.
Verdict
The court finds the defendant guilty of operating a motor vehicle while her blood alcohol content was greater than .08% in violation of section 1192 (2) of the Vehicle and Traffic Law.
Based on this verdict, this court does not proceed to the common-law, section 1192 (3) of the Vehicle and Traffic Law charge, nor do I consider section 1192 (1) (see People v Cruz, 48 NY2d 419 [1979]). The court sua sponte dismisses the common-law count of driving while intoxicated. The court, however, finds sufficient credible testimony to show the defendant was speeding at a rate in excess of 72 mph in a 55 mph zone and, therefore, finds the defendant guilty of violating section 1180 (b) of the Vehicle and Traffic Law. The court further finds sufficient credible testimony to show the defendant failed to keep right while operating her motor vehicle and, therefore, finds the defendant guilty of violating section 1120 (a) of the Vehicle and Traffic Law.