OPINION OF THE COURT
Kenneth R. Fisher, J.
The Monroe County District Attorney commenced this action, seeking declaratory relief collaterally attacking a ruling of a local criminal court, which precluded the use of government-generated business records to establish the foundation requirements for the admission of breathalyzer test results at the trial of a person charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2). The local criminal court determined that the use of this documentary evidence, a certification of calibration, violates the Confrontation Clause of the United States Constitution Sixth Amendment, as interpreted by the Supreme Court in Crawford v Washington (541 US 36 [2004]). The same local criminal court made identical rulings thus far in four cases, resulting in the dismissal of the section 1192 (2) charge in each instance on legal sufficiency grounds, because the District Attorney failed to call live witnesses to establish that the breathalyzer was properly functioning. (See CPL 290.10.)
*453 Citing 11 other section 1192 (2) cases pending before the same local criminal court, plaintiff fears that each of them and future cases like them will be similarly dismissed at trial because it is, the District Attorney maintains, practically impossible for him to produce for trial in Monroe County the required witnesses from Albany who test the machines and the simulator solutions for prosecutors throughout the state. He therefore seeks a judgment declaring that the use of government-generated business records to establish the foundation requirements for the admission of breathalyzer test results does not violate the Confrontation Clause of the United States Constitution, as interpreted by the United States Supreme Court in Crawford. Additionally, he seeks a declaration that the local criminal court is precluded from denying introduction of such documentary proof on Crawford grounds. Before answering the complaint, defendant has moved to dismiss it on the ground that an action for declaratory judgment does not lie in the present circumstances, or if it does lie in an abstract sense, that the court should exercise its discretion by refusing to hear the matter.
In Matter of Morgenthau v Erlbaum (59 NY2d 143 [1983], cert denied 464 US 993 [1983]), the Court of Appeals upheld the discretionary power of supreme court to entertain an action for declaratory relief that, in effect, collaterally attacks a criminal court’s interlocutory ruling in favor of a defendant. The Court held that a declaratory judgment action against the criminal court judge may be allowed in the rare instance where the controversy is purely a legal one, the ruling affects fundamental rights, and has implications reaching far beyond the immediate case in which the order is made. (Id. at 145-146.) The Court indicated that, while supreme court may decline to hear the matter if there are other available remedies, it is not required to do so. (Id. at 148.) The Court emphasized that, in deciding whether to entertain a declaratory judgment action, supreme court should be concerned primarily with avoiding litigation of “factual issues in proceedings collateral to the criminal trial” and should “shu[n] collateral appeals that will delay the criminal trial.” (Id. at 151.)
With these principles in mind, the Court of Appeals said that a declaratory judgment action is “most appropriate when the challenge is to a ruling on how a trial is to be conducted . . . [since] [t]his ‘procedural’ type of question is also the sort that is likely to recur and to be decided in the same manner regardless *454 of the facts underlying the criminal charges.” (Id. at 152.) In contrast, the Court noted that “mere evidentiary rulings would not be proper subjects [of a declaratory judgment action]” (id.), presumably because such rulings are fact based and thus, in that sense, unique.
Here, as in Erlbaum, is an example of the proper use of a declaratory judgment action. The action in Erlbaum was brought by the District Attorney to challenge a criminal court ruling recognizing that persons charged with prostitution have a constitutional right to a jury trial despite CPL 340.40 (2), which mandated a bench trial. The case involved a “ ‘procedural’ type of question . . . that is likely to recur and to be decided in the same manner regardless of the facts underlying the criminal charges.” (Erlbaum, 59 NY2d at 152.) Moreover, the recurring nature of the issue, if ultimately determined not to be meritorious (a question not presented on this motion and not reached), poses “a risk of significantly obstructing the task of administering criminal justice by imposing an undue burden on prosecutors and the courts.” (Id.)
Since Erlbaum, there have been four other decisions of the Court of Appeals approving a district attorney’s use of a declaratory judgment action to challenge the ruling of a criminal court in favor of a defendant. In one of them, the ruling involved the dismissal of a felony complaint by a supreme court justice, whose authority to dismiss was limited by CPL 210.20 to indictments. (Matter of Morgenthau v Roberts, 65 NY2d 749 [1985].) The Court of Appeals determined that declaratory relief was appropriate because “the People’s appeal involves no factual issues, is not collateral and the trial court’s ruling is likely to recur with similar results.” (Id. at 751.) In the other three decisions, the Court of Appeals sanctioned the Appellate Division’s conversion of a CPLR article 78 proceeding to a declaratory judgment action where the underlying issue involved the constitutionality of the plea provisions of the death penalty statute. (People v Mateo, 2 NY3d 383 [2004], cert denied 542 US 946 [2004]; see also, Matter of Hynes v Tomei, 237 AD2d 52 [2d Dept 1997], revd on other grounds 92 NY2d 613 [1998]; Matter of Relin v Connell, 251 AD2d 1041 [4th Dept 1998], revd on other grounds 92 NY2d 613 [1998].) The Court of Appeals explained that, because the Appellate Division order did not reverse the trial court’s order, or immediately prevent the trial court from proceeding on its course, “Erlbaum’s policy considerations — protecting criminal trials from interference, or even *455 undoing, by interlocutory appeals — were not implicated.” (Mateo, 2 NY3d at 401.)
The leading commentators recognize this well-established precedent. (See 5 Weinstein-Korn-Miller, NY Civ Prac If 3001.06k, at 30-74 [2d ed]; Siegel, NY Prac § 437, at 742 [4th ed 2005].) Accordingly, the court declines to dismiss the instant action. Local criminal court ruled that it is unconstitutional at a trial of a person charged with violating Vehicle and Traffic Law § 1192 (2) for the district attorney to rely upon business records to establish the requisite foundation for the admission of the breathalyzer test results. History shows that it is a ruling that is likely to recur with the same results. Although the impact of the ruling is not as great as the impact of the ruling in Erlbaum, which potentially affected several thousand cases a year (59 NY2d at 153), it is, if not meritorious, no less important to the system of criminal justice. Heretofore, the use of business records to establish the foundation for admission of breathalyzer results, under the rubric of Ohio v Roberts (448 US 56 [1980]) and New York’s business records exception to the hearsay rule, was sanctioned out of “practical necessity” given the fact that the testing function is centralized in Albany, the state capital, as it is in many states. (People v Garneau, 120 AD2d 112, 115 [4th Dept 1986], lv denied 69 NY2d 880 [1987].) Thus, the risk that this ruling, if incorrect (again a matter not reached or considered here), could significantly obstruct the administration of justice is manifest.
Another significant factor in determining the availability of declaratory relief is that the challenged ruling is based on a constitutional right that is “procedural” in nature. (Erlbaum, 59 NY2d at 152.) The constitutional right of confrontation is a “bedrock procedural guarantee” governing “the manner in which witnesses give testimony in criminal trials.” (Crawford, 541 US at 42-43.) “It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination.” (Id. at 61.) The ruling challenged here insists that the foundation for admissibility of breathalyzer results be adduced with live testimony. The ruling thus transcends a mere evidentiary ruling and implicates “how a trial is to be conducted.” (Erlbaum, 59 NY2d at 152.) Because no issue of fact need be determined by the court and this action will not delay in any way a pending criminal trial, it is appropriate that declaratory relief is sought. (Id.)
Finally, there is no other remedy available to the District Attorney. The District Attorney’s statutory right to appeal from a *456 trial order of dismissal (CPL 450.20 [2]) violates the constitutional protection against double jeopardy. (People v Brown, 40 NY2d 381, 382 [1976], cert denied 429 US 975 [1976].)
As the District Attorney commendably conceded at oral argument, however, the foregoing analysis does not support both aspects of the declaratory relief sought in the complaint. In cases of this sort,
“declaratory judgment does not entail coercive relief, but only provides a declaration of rights between the parties that, it is hoped, will forestall later litigation. In other words, the declaration in the judgment itself cannot be executed upon so as to compel a party to perform an act or to surrender property.” (Erlbaum, 59 NY2d at 148 [citations omitted].)
An “action for declaratory judgment cannot seek any injunction against the individual defendant or the criminal court.” (Id. at 152.)
The first part of the relief sought here is appropriate because it amounts to nothing more than a declaration of rights. The second part is not because it is coercive in nature in that it purports to preclude the local criminal court from taking action in matters before him. The court therefore grants defendant’s motion to dismiss that part of the complaint seeking a declaration that defendant “may not preclude introduction of certified Breath Documents . . . over which he presides on the basis that such documents violate the Confrontation Clause ... as interpreted ... in Crawford” (see Kraham v Mathews, 305 AD2d 746, 747 [3d Dept 2003]; Matter of Johnson v Hunter, 239 AD2d 127 [1st Dept 1997]). In all other respects the motion is denied.
The court notes that defendant opposes the District Attorney’s request that the motion be treated as a motion for summary judgment pursuant to CPLR 3211 (c) and has not responded to plaintiffs papers discussing the merits of the action. Under the circumstances, the court denies plaintiff’s request without prejudice and, after issue is joined, the District Attorney may move for summary judgment on the papers already submitted, if he is so inclined. Scheduling will abide plaintiffs decision in this regard.
On Subsequent Motion for Summary Judgment
In March 2004, the United States Supreme Court dramatically changed the rules regarding the admissibility of hearsay *457 evidence at the trial of a criminal defendant. In Crawford v Washington (541 US 36 [2004]), the Court abandoned almost 25 years of precedent based on Ohio v Roberts (448 US 56 [1980]), and adopted a new approach said to be more faithful to the text of the Sixth Amendment and its historical roots. Less than two years later, we are only beginning to understand the breadth of Crawford and its profound impact on the conduct of a criminal trial. In this case, I am asked to consider the impact of Crawford on the prosecution of persons charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2).
L
At its heart, this matter concerns a ruling of an Irondequoit Town Justice at the bench trial of a person charged with violating section 1192 (2) on July 10, 2004. (People v Orpin, 8 Misc 3d 768 [Irondequoit Just Ct 2005].) During his case-in-chief, the prosecutor sought to introduce certain documents certified as business records pursuant to CPLR 4518 (c) to establish the requisite foundation for the admission of the breath test results. The defendant objected on two grounds: (1) the documents were not business records because they were prepared for the purpose of litigation and (2) the documents were testimonial in nature and thus inadmissible under Crawford without an opportunity to cross-examine their makers. The Town Justice overruled the hearsay objection but sustained the Crawford objection, and thus the certified documents were not received in evidence. Without that evidence, the Town Justice determined that there was legally insufficient evidence to establish the section 1192 (2) offense and thus he dismissed that charge pursuant to CPL 290.10.
The evidence that was the subject of the Town Justice’s ruling consisted of two documents. Both documents were separately certified pursuant to CPLR 4518 (c) as business records. The first document pertained to the servicing of the breath testing device on April 15, 2004 by the Office of Public Safety at the New York State Division of Criminal Justice Services at the request of the Irondequoit Town Police Department. The other document was an April 20, 2004 certification of the reference solution by the New York State Police.
The first document was entitled: “Breath Test Instrument Record of Inspection/Maintenance/Calibration.’’ As the title implies, this document was not only a record of the work that *458 was done on the instrument[1] but also a record of the “calibration” of the instrument before it was returned to service. “Calibration” in this context refers, not to an adjustment of the instrument, but to a check of its accuracy. This check is done by comparing the results of testing to a standard set by the Department of Health. Under this standard, a breath testing instrument must be capable of analyzing a reference standard “within limits of plus or minus 0.01 percent weight per volume” of the reference standard value. (10 NYCRR 59.4 [a] [3].) The testing involves the analysis of two reference solutions, one set at a standard of “0.100% at 34.0 degrees centigrade” and the other at “0.080% at 34.0 degrees centigrade.” The recorded results were within the mandated margin of error, and, thus, the technician who performed the testing certified the following:
“I hereby certify that I have performed any necessary maintenance procedures and calibrated NAT’L PATENT ANALYTICAL SYS breath instrument model DATAMASTER, serial number 200204, and have determined that it is accurate and reliable for the determination of ethyl alcohol in the blood by analysis of the breath. The instrument’s test results are recorded above and this instrument satisfies all limits and standards established by the New York State Commissioner of Health as enumerated in Part 59, Subchapter D of Chapter II, TITLE 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York, (10 NYCRR Part 59) as amended.
“I further certify that the entries made in these records of inspection/maintenance/calibration were made at the time that such inspection/maintenance/ calibration of the above identified breath test instrument was performed, or within a reasonable time thereafter.”
The second document was generated by the State Police in its role as the statewide distributor of reference solutions. This solution is used, not only by the Office of Public Safety to calibrate breath testing instruments that have been serviced, but also by police statewide to check the accuracy of breath testing instruments each and every time they are used. The *459 Department of Health mandates that such checks be conducted before or after every breath test to ensure a degree of accuracy “plus or minus 0.01 percent weight per volume” of the reference standard. (10 NYCRR 59.5 [d].)
The undisputed evidence in this case establishes that the State Police receive six shipments a year of reference solution, which is privately manufactured and shipped in lots of 2,000 one-half-litre bottles. Before distributing a shipment, the State Police randomly select a bottle and analyze its contents to determine if it contains the appropriate concentration of ethyl alcohol. If it does, then the lot is certified by the State Police for use.
The second document was a record of the method of the analysis and the results of that analysis, expressed in milligrams of ethyl alcohol per 100 milliliters of solution. Based on those recorded results, the State Police certified that: “Simulator solution lot number 04040 has been certified to contain the appropriate concentration of ethyl alcohol and is hereby approved for use. When this reference solution is used with a properly operating breath testing instrument, the solution will provide a value of 0.10% at 34 [degrees] C.”
In his decision, the Town Justice rejected the contention that the foundational documents described above were not admissible under the business records exception to the hearsay rule because they were prepared for the purpose of litigation. The Town Justice explained that he was bound by previous rulings of the Court of Appeals in People v Mertz (68 NY2d 136, 147-148 [1986]), and the Fourth Department in People v Dailey (260 AD2d 81, 83 [4th Dept 1999], lv denied 94 NY2d 821 [1999]), that such documents are admissible under the business records exception if properly certified pursuant to CPLR 4518 (c), as these are. (8 Misc 3d at 770-771.) Nevertheless, because the makers of these documents “must have known that [they] would be used in criminal prosecutions . . . [and] [i]t is difficult to conceive of any [other] purpose [for their preparation],” the Town Justice ruled that the documents are “testimonial” under Crawford and thus inadmissible because the defendant never had the opportunity to cross-examine their makers. (Id. at 773-775.) The Town Justice reasoned: “[W]hat matters under the Crawford analysis is that the declarant knows that the statement will be used in a prosecution. Once this test is satisfied, the Confrontation Clause is implicated, and the defendant is constitutionally entitled to cross-examine the declarant.” (Id. at 774.)
*460 The District Attorney commenced this declaratory judgment proceeding to attack this ruling collaterally. The District Attorney seeks a declaration that business records of the type proffered in the Orpin case may be used to establish the foundation for the admission of breath test results without violating the Confrontation Clause as interpreted by the United States Supreme Court in Crawford.
II
The Sixth Amendment of the United States Constitution sets forth the rights enjoyed by the accused “[i]n all criminal prosecutions.” Among those rights is the right of “the accused ... to be confronted with the witnesses against him.” Roberts held that the Sixth Amendment right of confrontation limits the ability of the prosecution to use hearsay evidence against a criminal defendant. The test that it announced, however, was reliability-based, conditioning “the admissibility of all hearsay evidence on whether it falls under a ‘firmly rooted hearsay exception’ or bears ‘particularized guarantees of trustworthiness.’ ” (Crawford, 541 US at 60, quoting Roberts, 448 US at 66.) Crawford abrogates that rule as it applies to “testimonial [hearsay] evidence.” Crawford holds that:
“Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers’ design to afford the States flexibility in their development of hearsay law — as does Roberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross examination.” (Id. at 68.)
Crawford identifies “testimonial evidence” as the core concern of the Confrontation Clause as evidenced by the historical record and the text of the Clause itself. The historical record, in the view of the court, indicates that the “principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.” (Id. at 50.) The text, according to the Court, reflects the same focus, inasmuch as the term “witnesses” means those who “bear testimony” and “ ‘[testimony’ ... is typically ‘[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.’ ” (Id. at 51, quoting 1 Webster, An American *461 Dictionary of the English Language [1828].) As to this “specific type of out-of-court statement” (id.), Crawford establishes an absolute rule prohibiting its admission in evidence without confrontation. For statements in this category, Crawford firmly rejects the reliability-based test announced in Roberts.
The problem with Crawford is that it does not “spell out a comprehensive definition of ‘testimonial.’ ” (Id. at 68.) Instead, Crawford provides only interpretive guidance based upon historical examples which find parallels in certain present-day practices. The historical examples — such as privately issued commissions, examination of witnesses upon interrogatories, depositions taken by coroners and ex parte judicial examinations — are said to have counterparts in present-day police interrogations, plea allocutions and the examination of witnesses at preliminary hearings or before a grand jury. While Crawford does not define “testimonial,” it states that the Confrontation Clause “must be interpreted” in light of these historical examples (id. at 50), which generally are characterized by the “[i]nvolvement of government officers in the production of testimony with an eye toward trial.” (Id. at 56 n 7.)[2]
Crawford suggests that, when the Confrontation Clause is interpreted in this way, not all hearsay implicates the core concerns of the Clause. The court provided examples:
“An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, ex parte examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.” (Id. at 51.)
Indeed, Crawford indicates in dicta that many hearsay exceptions cover statements that “by their nature” are not testimonial, such as business records. (Id. at 56.)
Therein lies the crux of the problem here. Are the documents in question nontestimonial because they are business records?
*462 III
The business records exception to the hearsay rule generally applies to “records systematically made for the conduct of a business.” (People v Kennedy, 68 NY2d 569, 579 [1986].) As such, most business records are the antithesis of “testimony [produced] with an eye toward trial” (Crawford, 541 US at 56 n 7), and thus outside the scope of Crawford. Indeed, the Supreme Court has held that the business records exception does not apply to records prepared primarily for litigation. (Palmer v Hoffman, 318 US 109, 114 [1943].) Police reports, in particular, have been held to run afoul of Palmer because “such utility as they possess relates primarily to prosecution of suspected law breakers, and only incidentally to the systematic conduct of police business.” (United States v Ware, 247 F2d 698, 700 [7th Cir 1957]; see also, Hoffman v Palmer, 129 F2d 976, 991 [2d Cir 1942] [report excluded because it was “dripping with motivations to misrepresent”], affd 318 US 109 [1943].)
However, the New York view of the business records exception, as it is codified in CPLR 4518 (a), is more liberal, allowing for the introduction in evidence of records that may be disallowed under Palmer. (See Galanek v New York City Tr. Auth., 53 AD2d 586 [1st Dept 1976], lv denied 40 NY2d 807 [1976]; 5 Barker and Alexander, New York Practice: Evidence in New York State and Federal Courts § 8:41 [2005].) Under CPLR 4518 (a), even records prepared primarily for litigation are admissible as business records “if there are other business reasons which require the records to be made.” (People v Foster, 27 NY2d 47, 52 [1970].) Only “records prepared solely for the purpose of litigation” fall outside the scope of the hearsay exception. (Id. [emphasis supplied].) Thus, the Court of Appeals in Foster upheld the admissibility of records maintained by the police to prove the reliability of their speedometers even though the records were made principally for use as proof at speeding trials. (See also, People v Guidice, 83 NY2d 630, 635 [1994].)
Therefore, it is apparent that there is a class of business records in New York that may run afoul of Crawford. Before concluding that the business records at issue here are not testimonial under Crawford, it must be determined whether they were made primarily for litigation purposes.[3]
*463 rv
The court examines first the purpose of the records of the Office of Public Safety concerning the maintenance of breath testing instruments. Breath testing instruments are used statewide for purposes of traffic law enforcement. It is a “per se” crime for a person to “operate a motor vehicle while such person has .08 of one per centum or more by weight of alcohol in the person’s blood as shown by chemical analysis.” (Vehicle and Traffic Law § 1192 [2].) The making of this a “per se” crime reflects a legislative judgment that persons with blood alcohol levels at or exceeding .08 of 1% cannot operate a motor vehicle safely and are a danger to themselves and others on the highway. Breath testing is the principal means used by police agencies to enforce this law.
The breath test may confirm that the person stopped by a police officer has a blood alcohol level above the statutory threshold, in which case the person is subject to arrest for violation of section 1192 (2). It may also indicate, though, that the person’s blood alcohol level is below the statutory threshold, in which case such an arrest is not authorized. The testing therefore serves the legitimate law enforcement purpose of weeding out persons who may have consumed alcohol but whose blood alcohol level is not at the statutory level. Indeed, for those persons with blood alcohol levels of .05 of 1% or less, the breath test may exonerate them from any liability under section 1192, including liability under section 1192 (1) and section 1192 (3). (See Vehicle and Traffic Law § 1195 [2] [a].)
With so much riding on the outcome of a breath test, it is imperative that the instruments used by the police for that testing are accurate. Indeed, by regulation, the State mandates that the instruments be capable of a specific degree of accuracy. (See 10 NYCRR 59.4 [a] [3].) To comply with that mandate, the instruments are inspected at regularly scheduled intervals by technicians trained in their intricacies. During the course of these inspections, the instruments are repaired and maintained by the technicians who then perform a series of tests on the instruments to certify their accuracy before returning them to the police for their use.
In many ways, these inspections are akin to periodic state-mandated safety inspections of motor vehicles. Just as auto *464 mechanics must determine periodically whether cars meet the state-imposed safety criteria, technicians must determine periodically whether breath testing instruments meet state-imposed accuracy criteria. When a technician certifies the accuracy of a breath testing instrument, he is acting no differently than an auto mechanic when he affixes an inspection sticker on a car. The certifications are “memorials of the fact that the tests were made and what the results were.” (Foster, 27 NY2d at 52.) They signify to the police, as the owners of the breath testing instruments, that the instruments meet the state accuracy standard, just like inspection stickers signify to car owners that their vehicles meet state safety standards.
This inspection function is performed by the Office of Public Safety in Albany pursuant to the authority vested in the Division of Criminal Justice Services by 9 NYCRR 6031.2 (a) (“The division will, for the appropriate fee, calibrate, service and repair those types of instruments and devices listed in section 6031.3 of this Part”). Presumably, this function has been centralized in Albany as a cost-saving measure since it eliminates the need for individual police departments to have their own technicians on staff. At its “Equipment Repair Center” (see chttp:// criminaljustice.state.ny.us/ops/erc/index.htm>, cached at chttp:// www.courts.state.ny.us/reporter/webdocs/NYSOPS_equip_repair_center.htm>), “trained technicians of the division, using factory-approved parts,” maintain and repair the wide variety of breath testing instruments used by police agencies across the state. (9 NYCRR 6031.2 [b].) Maintenance records are kept by the “Equipment Repair Center” in the regular course of its business as the designated “repair shop” for these instruments, much like the repair records kept by an auto repair shop. Like auto repair records, these records document an instrument’s maintenance history, which is relevant to future maintenance and the need for repairs and replacement. Furthermore, state regulations mandate that these records be maintained. (10 NYCRR 59.5 [f].)
The first document at issue here is a portion of that maintenance record, showing that approximately three months before the subject arrest the breath testing instrument in question was serviced and certified as accurate. That the document has an incidental use as proof in court of the reliability of the instrument does not alter the fact that the document has a primary business purpose that would exist even in the absence of any litigation.
*465 Likewise, it is equally self-evident that the records maintained by the State Police with regard to its testing of reference solutions, such as those set forth in the second document at issue here, have a primary business purpose. The Division of State Police is solely responsible for obtaining and distributing the reference solutions that are utilized by the Office of Public Safety and police statewide to ensure the accuracy of the breath testing instruments they repair or use. (See <http://www. troopers.state.ny.us/Forensic%5FScience/Lab%5FSections/ Breath%5FTesting>, cached at <http://www.courts.state.ny.us/ reporter/webdocs/forensic_science_breath_testing.htm>.) The random tests that the State Police perform serve the legitimate business purpose of quality assurance. The testing is done by the State Police in Albany before a lot is distributed if for no other reasons than to prevent the shipment of defective solutions, to eliminate the need for testing by the individual agencies involved, and to facilitate returns to the manufacturer should a problem be detected. The records kept by the State Police are mandated (10 NYCRR 59.5 [f]), as “memorials of the fact that the tests were made and what the results were.” (Foster, 27 NY2d at 52.) The certifications tell each distributee that the particular shipment they have received has been tested and is approved for use. In this court’s opinion, the business purposes served by these records would exist even in the absence of any litigation.
Therefore, the court concludes that the documents in question, as business records (both under the federal and state formulation), do not implicate core concerns of the Confrontation Clause as interpreted by Crawford. It matters not that they may have an incidental litigation purpose. They are the antithesis of the testimonial evidence that is the focus of Crawford inasmuch as they are primarily “typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls.” (Palmer v Hoffman, 318 US at 113.)
V
Moreover, the focus of the required inquiry under Crawford is upon the historical foundation of the Confrontation Clause (541 US at 49-50), and the evidence at issue here bears little resemblance to the evidence that has triggered confrontation problems in the past. First, neither document in question accuses anyone of conduct that is criminal. They are neutral in *466 character, relating only to the operation of the breath test instrument and the reference solution used to calibrate it. The ex parte statement at issue in Crawford was inculpatory in that it refuted the defendant’s claim of self-defense. (See People v Rogers, 8 AD3d 888, 891-892 [3d Dept 2004] [involving evidence similarly inculpatory].) So too was the hearsay evidence in the trial of Sir Walter Raleigh as it involved an accusation of treason. Commentators have suggested that confrontation concerns historically have been triggered by accusatory statements. (See Robert P. Hosteller, “Testimonial” and the Formalistic Definition — The Case for an “Accusatorial” Fix, 20 Grim Just [ABA] 14 [2005]; Robert P. Hosteller, Remaking Confrontation Clause and Hearsay Doctrine Under the Challenge of Child Sexual Abuse Prosecutions, 1993 U 111 L Rev 691, 747-755 [1993]; Hichael H. Graham, The Confrontation Clause, The Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship, 72 Hinn L Rev 523, 593-600 [1988]; Toni H. Hassaro, The Dignity Value of Face-To-Face Confrontations, 40 U Fla L Rev 863, 863-873 [1988].) Indeed, the Second Circuit has said that: “The Confrontation Clause targets only that testimony that contains accusations against the defendant.” (Ryan v Miller, 303 F3d 231, 247 [2d Cir 2002].) It is the breath test results that are inculpatory at the trial of a person charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) and thus it is the operator of the instrument who must be produced for trial, so that he or she may be cross-examined as to “whether the test was properly administered.” (California v Trombetta, 467 US 479, 490 [1984]; see Rogers, 8 AD3d at 892 [requiring production of person who administered inculpatory blood test].)
Second, driving while intoxicated in violation of section 1192 (2) has but two elements (CJI2d[NY] Vehicle and Traffic Law § 1192 [2]), and neither is established by the documents in question. (Cf. Kirby v United States, 174 US 47 [1899]; People v Pacer, 21 AD3d 192 [4th Dept 2005], lv granted 5 NY3d 809 [2005].) The person who does the calibration testing or solution testing is purely a foundational witness (see People v Freeland, 68 NY2d 699, 700 [1986]), who is unable to testify as to any element of the crime charged. It has been recognized that the Confrontation Clause allows the introduction of “[documentary evidence to establish collateral facts admissible under the common law.” (Dowdell v United States, 221 US 325, 330 [1911]; see Dutton v Evans, 400 US 74, 97 [1970] [Harlan, J., concur *467 ring].) The case cited by the Supreme Court in support of that proposition involved the use of documentary evidence to establish a fact that was not an element of the offense charged. (People v Jones, 24 Mich 215 [1872].) To that extent, Jones is similar to the case at bar.
Third, unlike Crawford or any of the historical examples it cites, the evidence at issue here records facts as easily and reliably proven by the documents themselves as by live testimony. The first document is offered for the truth of the matters asserted only with reference to the date the instrument was serviced and results of the calibration testing. Likewise, the second document is offered only to establish the date and results of the testing of the reference solution before it was shipped to the police. (See Freeland, 68 NY2d at 700.) These matters are neither discretionary nor based upon opinion. By mandating the degree of accuracy of breath testing instruments, the State has set the parameters of when a “testing device [is] in proper working order.” (Id.) The results of the calibration testing are either inside or outside those parameters. Likewise, the reference solution either contains the appropriate concentration of ethyl alcohol or it doesn’t.
Defendant contends herein that the Supreme Court’s reference to the Webster’s definition of “testimonial” indicates that the Confrontation Clause applies whenever there is “ ‘[a] solemn declaration or affirmation ... for the purpose of establishing or proving some fact.’ ” (Crawford, 541 US at 51.) The court disagrees. That reference was made only in support of the point that “the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused.” (Id. at 50.) The issue before the Supreme Court in Crawford concerned the circumstances under which an ex parte statement is testimonial, not the content of statements implicating core concerns of the Confrontation Clause. Indeed, one could argue, based on the facts of Crawford and the historical precedent that it cites, that Crawford is based upon the assumption that it is accusatory statements which implicate such core concerns.
VL
Finally, the majority of courts in other states that have considered the issue have concluded that Crawford does not bar the use of documentary evidence to establish the foundation for *468 the admission of breath test results. (Rackoff v State, 275 Ga App 737, 621 SE2d 841 [Ct App 2005]; Rembusch v State, 836 NE2d 979 [Ind Ct App 2005]; Napier v State, 820 NE2d 144 [Ind Ct App 2005]; State v Carter, 326 Mont 427, 114 P3d 1001 [2005]; State v Godshalk, 381 NJ Super 326, 885 A2d 969 [2005]; State v Cook, 2005 WL 736671, 2005 Ohio App LEXIS 1514 [Ct App, 6th Dist 2005]; Luginbyhl v Commonwealth, 46 Va App 460, 618 SE2d 347 [2005].) Florida appears alone among the states that have considered the issue in holding that Crawford is applicable. (Belvin v State, 2005 WL 1336497, 2005 Fla App LEXIS 9094 [Dist Ct App 2005]; Shiver v State, 900 So 2d 615 [Fla Dist Ct App 2005].) Florida, however, has a statute under which an affidavit setting forth the results of a breath test is admissible as a public record if the affidavit discloses, among other things, “[t]he type of test administered and the procedures followed” and “the date of performance of the most recent required maintenance on [the] instrument.” (Fla Stat Ann, tit 23, § 316.1934 [5]; see Belvin, 2005 WL 1336497, *2, 2005 Fla App LEXIS 9094, *4-5.) Before these decisions, there was no requirement in Florida that the person who performed the test be produced; nor was a separate affidavit from the person who actually inspected the instrument required. (See Godshalk, 381 NJ Super at 333, 885 A2d at 973 [distinguishing Shiver].)
In this state, except for Orpin, there are no other reported decisions excluding this type of documentary evidence on Crawford grounds. The other reported decisions uniformly hold that such evidence is admissible. (See People v Fisher, 9 Misc 3d 1121[A], 2005 NY Slip Op 51726[U] [Rochester City Ct 2005]; People v Krueger, 9 Misc 3d 950 [Lockport Just Ct 2005]; People v Kanhai, 8 Misc 3d 447 [Crim Ct, Queens County 2005].)
Amicus argues that, unless the persons who conduct the calibration testing and solution testing are produced for trial, the defendant is denied any opportunity to challenge the breath test results substantively. The Supreme Court rejected a similar argument in holding that the Due Process Clause does not require the preservation of the breath samples of suspected drunk drivers. (Trombetta, 467 US at 490; see People v Alvarez, 70 NY2d 375, 380-381 [1987].)[4]
*469 VIL
It therefore is the determination of this court that the admission of documentary evidence of the type at issue here to establish the foundation for the admissibility of breath test results does not implicate core concerns of the Confrontation Clause as interpreted by Crawford. Plaintiff is granted summary judgment declaring that the admission of such evidence at a trial of a person charged with driving while intoxicated in violation of Vehicle and Traffic Law § 1192 (2) is not a violation of a defendant’s right of confrontation under the Sixth Amendment of the United States Constitution as interpreted by Crawford.

. The instrument was a “BAG DataMaster,” which is an infrared detection device manufactured by National Patent Analytical Systems, Inc. that has been approved by the New York State Department of Health for use in New York. (See 10 NYCRR 59.4.)

. A strong argument may be made that even the infamous letters written by Lord Cobham in the trial of Sir Walter Raleigh fit this characterization inasmuch as the letters were written while Lord Cobham was under the physical control of the government following his examination before the Privy Council. (See Hosteller, Crawford v Washington: Encouraging and Ensuring the Confrontation of Witnesses, 39 U Rich L Rev 511, 546 [2005].)

. It is for this fundamental reason, i.e., the difference between the federal and New York State business records rules, that Justice DeMarco was correct *463 in not accepting reflexively the District Attorney’s argument that, simply because these records qualify as business records under New York law, they are not testimonial under the Crawford decision.

. The motion of National College for DUI Defense (Edward L. Fiandach, Esq., Rochester, New York, of counsel) for leave to file a brief amicus curiae is granted.