COMMONWEALTH of Kentucky,
Appellant,

v.

Michael Alan WIRTH, Appellee.

No. 95–SC–402–CL.

Supreme Court of Kentucky.

Sept. 26, 1996.

Rehearing Denied Jan. 30, 1997.

A.B. Chandler, III, Attorney General, Frankfort, Garry L. Edmonson, Kenton County Attorney, Covington, for appellant.

Robert A. Riley, Assistant Public Advocate, LaGrange, Edward C. Monahan, Assistant Public Advocate, Frankfort, for appellee.

Wilbur M. Zevely, Florence, for amicus curiae.

LAMBERT, Justice.

We granted the Commonwealth's request for certification of the law (Ky. Const. § 115 and CR 76.37(10)) to determine the proper construction of KRS 189A.010 and other statutes which deal with driving under the influence of alcohol. In a broadly interpretive opinion, the Kenton District Court construed the statute to require, *inter alia,* a pre-trial election by the Commonwealth as to which of the four subparts of KRS 189A.010(1) it would undertake to prove, and to require additional warnings by which a defendant would be informed that he may not be compelled to submit to any chemical testing and to further correct perceived inaccuracies in the statutory warnings. The trial court also held that without expert testimony to prove the absorption rate of alcohol, chemical testing performed after the last ingestion of alcohol will not be admitted in evidence to prove blood alcohol content at the time the defendant was driving. Finally, the trial court held that expert testimony as to the proper operation of the machine would be required to establish a foundation for admission of the results of a breath test.

We have been informed that great uncertainty and inconsistency prevails within the divisions of the Kenton District Court and perhaps in district courts elsewhere in Kentucky. In this opinion we will answer the questions which have been raised while recognizing, nevertheless, that respondent, for reasons of double jeopardy, may not be further prosecuted due to the trial court's finding that he was not guilty of a violation of the *per se* statute, KRS 189A.010(1)(a).

After having been observed driving in an erratic manner after midnight on December 3, 1994, respondent was stopped by a Villa Hills police officer on suspicion of violating

the alcohol driving laws. After failing various field sobriety tests, respondent was arrested and taken to the police station. At the station, an officer who was certified to operate the Intoxilyzer 5000 read respondent the warnings required by KRS 189A.105. After observing respondent for twenty-three minutes, the test was administered and the result obtained was .156 blood alcohol content. After various pre-trial motions and a suppression hearing, the case was set for trial by jury. Thereafter, however, respondent waived his right to a jury trial and the case was submitted to the trial court upon a joint stipulation of facts. The facts so stipulated were that the arresting officer had probable cause to arrest respondent; that the warning required by KRS 189A.105(1)(a) was read to respondent; that the operator was properly certified to operate the Intoxilyzer 5000 pursuant to the administrative regulations; that the administration of the breath test followed the proper sequential steps required by the regulations; that the ambient air sample fell within an acceptable range; and that respondent was observed for twenty-three minutes before the breath test was given.

Despite the stipulated facts, the trial court found defendant not guilty substantially on grounds that the Commonwealth had failed to introduce evidence which related the Intoxilyzer result back in time to the point at which respondent had last been observed operating a motor vehicle, a period found to be one hour and twelve minutes. On this basis, the charges against respondent were dismissed.

■ The first issue we will address is whether the Commonwealth must elect under which section of KRS 189A.010(1) it intends to proceed. In this case, as is typical, the required election was between (a) and (b). Subsection (a) provides that a violation occurs when a person operates or is in physical control of a motor vehicle while the alcohol concentration in his blood or breath is .10 or greater. This is usually referred to as the *"per se"* statute and requires proof only of .10 or more alcohol concentration without regard to its effects on motor vehicle operation. *King v. Commonwealth*, Ky.App., 875

S.W.2d 902 (1994). Subsection (b) proscribes operation or physical control of a motor vehicle while under the influence of alcohol. This subsection broadly deals with the effect of alcohol on the motor vehicle operator and is usually proven by evidence of aberrant driving behavior.

The conduct proscribed in KRS 189A.010(1)(b) is not substantially different than under former law. What is different is subsection (a) which criminalizes the presence of chemicals in a defendant's blood or breath. In our view, this provision does not create a new or separate offense, but merely provides an additional means by which a motor vehicle alcohol related offense may be committed. While an additional means of committing the offense has been created, the punishment remains one and the same. As we see it, therefore, the question is whether in circumstances where a defendant may be guilty of violating two or more sections of the same statute, but subjected only to a single punishment, is it proper for the prosecution to go forward with all available proof of statutory violations, and permit a conviction on whatever basis is supported by the evidence. The answer is in the affirmative. *Robards v. Commonwealth*, Ky., 419 S.W.2d 570 (1967).

The trial court has read KRS 189A.010(1) to prefer or even mandate only a *per se* prosecution if such evidence is present. It said:

> The legislative scheme appears to have envisioned that all cases involving a BA reading or blood alcohol content of .10% or greater would be tried under KRS 189A.010(1)(a) as a per se offense....

Slip op. at 7.

> The legislative intent to encourage that all DUI cases with a BAC of .10% or higher be tried as "per se" cases is strongly evidence in the provisions of KRS 189A.010(2). *In this statute the legislature omitted the presumption of intoxication that was present in prior law.* This means that under KRS 189A there is no positive statutory presumption of intoxication if the BAC is .10% or higher. The only statutory presumptions in this Chapter regarding intoxication are now negative or neutral

presumptions and only apply in cases where the BAC is less than .10%. The theory goes that since there is no longer any need to prove intoxication or impairment, only the reading in excess of the statutory minimum is relevant. Therefore, there is no longer a need for a presumption of intoxication or impairment.

Slip op. at 9. We find no support in the statute for this interpretation. We observe that the obvious reason for the omission of any presumption when the blood alcohol content reading is .10 or greater is that a completed offense is established thereby, rather than a rebuttable presumption of impairment of driving ability. *King v. Commonwealth, supra.*

We have recently reiterated the viability of alcohol driving prosecutions based on evidence other than that which is derived from scientific testing. In *Commonwealth v. Hicks,* Ky., 869 S.W.2d 35 (1994), we quoted with approval from *Allen v. Commonwealth,* Ky.App., 817 S.W.2d 458 (1991), and stated that a DUI conviction could be sustained without evidence procured by use of a device for measuring intoxication. We held that the trial court erred in dismissing a case over prosecution objection where the scientific evidence had not been admitted. Indicating that the observations of the police officer would have been sufficient to make a prima facie case for the jury, we said:

In such a circumstance, the Commonwealth was entitled to go forward and the trial judge was without authority to dismiss the case. We reiterate, it is not the province of a trial court to determine that a case should be dismissed contrary to the wishes of a party who has announced ready for trial.

■ While we do not agree with an interpretation that the statute or laws requires an election as to which of the four statutory subsections will be prosecuted to the exclusion of all others, it would appear that fundamental fairness and appropriate trial preparation requires notice as to which statutory subsections will be proven by the Commonwealth. Such notice should be given in good faith within a reasonable time prior to trial to permit the defendant to assemble

evidence in opposition to the charges against him. A blanket notice covering all possible violations without regard to the available evidence would defeat the purpose and be tantamount to no notice at all.

Accordingly, it is our determination that the trial court erred with respect to its prohibition against a prosecution pursuant to KRS 189A.010(1) upon multiple theories. Where there is evidence to prove one or more theories of the case, the Commonwealth may present all such evidence and have the jury render a verdict thereon.

■ The next question presented is whether the warning provided for in KRS 189A.105 is insufficient and should be supplemented with additional warnings. It was the trial court's opinion that the warnings enumerated in KRS 189A.105(1)(a)(1), (2) and (3) are inaccurate and contain misinformation and should be supplemented so as to avoid any misleading and achieve greater accuracy. In particular, a primary focus is placed upon the provision which states that "no person shall be compelled to submit to any test or tests." KRS 189A.105. Appellee insists that not only are the warnings set forth in the statute inaccurate, but that it would be impossible to craft a warning which would be truly adequate. The remedy he proposes is to inform a defendant of his right to counsel prior to deciding whether to take or refuse a breath or blood test.

Initially, we discern no basis upon which a court may *sua sponte* supplement a warning required by a statute. Quite plainly the statute states that at the time a breath, blood or urine test is requested, the person shall be informed of certain matters. If such a warning is inaccurate, only the Legislature possesses power to modify it to achieve greater accuracy except where the inaccuracy would be so grave as to amount to a constitutional violation. While one may envision a fact pattern in which the required statutory warning would be inaccurate or misleading as applied, in general, it is not, and the trial court was without authority to require supplementation of the warning. In the context of a defendant's constitutional rights under *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct.

1709, 23 L.Ed.2d 274 (1969), this Court has held that one pleading guilty need not be informed of every possible consequence of the guilty plea. We observed that a multitude of events occur in a criminal proceeding which might influence a defendant to plead guilty or stand trial and that it would be impossible to inform a defendant of all facts and law which might affect his decision. *Jewell v. Commonwealth,* Ky., 725 S.W.2d 593 (1987). The same reasoning applies here.

■ In addition, we wish to correct what appears to be a widespread misinterpretation of the statute. By virtue of KRS 189A.103, one who operates a motor vehicle consents to a test of his blood, breath or urine for the purpose of determining alcohol concentration. The phrase "no person shall be compelled" in KRS 189A.105 could not rationally have been intended to contradict the consent provisions of KRS 189A.103. A more reasonable interpretation of the language used is that one who refuses will not be physically forced to submit to a chemical test. It does not mean that such person has a lawful right to refuse such testing.

The courts of this Commonwealth have not heretofore extended the constitutional right to counsel to the pre-chemical test stage of the proceeding and we decline to do so now. *Newman v. Stinson,* Ky., 489 S.W.2d 826 (1972); *Commonwealth, Transportation Cabinet v. Cornell,* Ky.App., 796 S.W.2d 591 (1990).

■ The next issue we will address concerns the foundation requirement for admission of a breath test. While admitting in evidence the result of the breath test in this case, as a condition of such admission the trial court required testimony from the technician who serviced the machine as a foundation for such evidentiary admission. The trial court recognized that "of all the District Courts in Kentucky, this is one of the very few that requires testimony from the B/A technician as a foundation element for introduction of B/A results." Slip op. at 18. It rejected the widespread use of the business and public records exception to the hearsay rule (KRE 8.03(6) and (8)) as evidence of timely and proper calibration of the machine to assure its accuracy, and instead relied upon a 1975 opinion of the Ohio Court of Appeals, *State v. Fellows,* 47 Ohio App.2d 154, 352 N.E.2d 631 (1975), which required the testimony of the person who calibrated the machine.

More than twenty years ago this Court decided *Marcum v. Commonwealth,* Ky., 483 S.W.2d 122 (1972), and *Owens v. Commonwealth,* Ky., 487 S.W.2d 897 (1972). We held that the test result should be admitted on the testimony of the operator:

> We believe the integrity was sufficiently established as the operator of the machine testified concerning the training and the operation of the machine, that all necessary preoperation checks were performed and that the machine was functioning satisfactorily.

> It is generally held that the prosecution has the burden of proving tests such as the breathalyzer were correctly administered. At a minimum this proof must show that the operator was properly trained and certified to operate the machine and that the machine was in proper working order and that the test was administered according to standard operating procedures. We believe the proof in this case met these requirements.

*Id.* at 900–01. The standard set forth in *Marcum* and *Owens* remains the principal foundation requirement. The only additional requirements are found in KRS 189A.103(3)(a), KRS 189A.103(4), and 500 KAR 8:020(2), which may be satisfied by means of business or public records showing compliance with the additional requirements. Provided the documentary evidence may be properly admitted, it is unnecessary to produce the testimony of the technician who serviced and calibrated the machine.

While this Court would be loath to discourage scholarship and thoughtful application of the law, we remain mindful of SCR 1.040(5) which requires the trial courts of this Commonwealth to follow applicable precedents of the Supreme Court or where there are no such precedents, those established in the opinions of the Court of Appeals. Where this Court or the Court of Appeals has spo-

ken to a particular issue, trial courts are not at liberty to embrace the contrary decisions from other jurisdictions even though they may believe them to be preferable.

As to appellee's contention with respect to a qualitative differences between prosecutions under the *per se* statute and under the law as it was when *Owens v. Commonwealth* was decided, we first observe that the conviction in *Owens* was for manslaughter in the second degree. In that case, the breath test evidence was admitted and amounted to persuasive evidence of the appellant's intoxication at the time he struck another vehicle and killed the driver. Thus, the contention that greater certainty is required now than under former law is unpersuasive. In fact, breath testing for intoxication has been in existence for a long time and has been used in a variety of prosecutions. While breath testing may not be flawless, it has been determined to have sufficient reliability to be admissible in evidence and to sustain a conviction. *Morgan v. Shirley*, 958 F.2d 662 (6th Cir.1992). We discern no need or basis upon which to require a greater degree of certainty.

■ The final issue is whether the Commonwealth was required to present expert testimony by which the breath test result would be related back in time to the point of motor vehicle operation. The statute at issue here makes it an offense to be in physical control of a motor vehicle while the alcohol concentration in the driver's blood or breath is .10 or more. In every case a significant period of time will elapse between the time of driving and the time of testing. In this case that period was one hour and twelve minutes. Even if there was no time taken for travel or administrative activities associated with the arrest and testing, manufacturers' protocols require at least twenty minutes observation during which the subject to be tested may not ingest any substances. The contention which emerges is that the test does not reflect the true blood alcohol content at the time of operation or control of a motor vehicle.[1] The trial court agreed:

> This Court rules that the B/A test result obtained within a reasonable time of operation, while admissible, does not make a prima facie case for violation of KRS 189A.010(1)(a). In order for the state to make a prima facie case there must be some evidence relating the BAC back to the time of operation.

Slip op. at 25. The court's ruling was despite its recognition that

> from a practical standpoint, most of the information necessary to accurately extrapolate B/A results is solely within the knowledge of the accused. For example, information regarding food consumption, duration of alcoholic beverage consumption, the quantity of alcohol consumed and the time alcohol consumption ceased is all information critical to extrapolation. Unfortunately, from the prosecutorial standpoint, in most cases such information is solely within the knowledge of the accused, not the Commonwealth.

Slip op. at 26.

■ We recognize that other jurisdictions are divided as to whether extrapolation evidence is necessary. While it is widely acknowledged that one's alcohol concentration level may change between the time of driving and testing, in most cases the delay will favor the defendant by producing a lower reading. An exception would be where one drank an extraordinary quantity in a brief period as described in n. 1, hardly a factual circumstance we should use to establish a benchmark. A literal in-

---

1. Amicus curiae, The Kentucky Association of Criminal Defense Lawyers, has explained this theory as follows:

    The simplest way to understand this theory is to assume an individual chugs or instantly consumes a pint of whiskey. This individual then immediately drives and is stopped for speeding or some other minor traffic violation. If he does not do well on the field sobriety tests, as few people do whether sober or not, he is arrested. Some period of time later, generally 20 minutes to 1 hour, he is given the Intoxilyzer and blows a number of somewhere around a .20. When this individual drove, obviously, his blood level was at or near 0.00. When he was tested, his blood alcohol was enormous because the whiskey that he instantly consumed had time to make it's [sic] way into his system. It is well known that absorption of alcohol from the stomach into the blood takes between 40 minutes to several hours, depending upon the facts in any given case.

terpretation of KRS 189A.010(1)(a) would require instantaneous testing to obtain a conviction under the *per se* statute. Such an interpretation would, of course, effectively abolish the statute. We are required to refrain from construing statutes in such a manner. *Bailey v. Reeves*, Ky., 662 S.W.2d 832 (1984). A more appropriate construction may be achieved by reference to KRS 189A.103, a statute which details testing procedures and addresses questions of validity, timeliness, etc. When the *per se* statute is read in conjunction with KRS 189A.103, it becomes manifest that instantaneous testing is not required. *Beckham v. Board of Education of Jefferson County*, Ky., 873 S.W.2d 575 (1994). What is required is compliance with the statutes and regulations. Extrapolation evidence is not required for the Commonwealth to make a prima facie case of a *per se* violation. KRS 189A.010(1)(a).

Our view with respect to extrapolation evidence is strengthened by the fact that without the defendant's cooperation, no valid extrapolation can occur. As the trial court observed, a number of facts known only to the defendant are essential to the process. This Court has long recognized that in exceptional circumstances the burden of going forward may be upon the accused where exempting facts are peculiarly within his knowledge. This proposition was stated in *Smith v. Commonwealth*, 313 Ky. 113, 230 S.W.2d 478 (1950), as follows:

> It is a general rule running through the law of evidence that where the negative of an issue does not permit of direct proof, or where the facts are more immediately within the knowledge of the defendant, the burden of proving that such averment is not true rests upon him.

*Smith*, 230 S.W.2d at 479 (quoting *Smith v. Commonwealth*, 196 Ky. 188, 244 S.W. 407, 408 (1922)).

In our view, an extrapolation based only on the lapse of time between driving and testing is no more reliable than the result yielded by a breath test a reasonable time later. As a safeguard, KRS 189A.103(7) permits a person who has been tested to obtain, in addition, a test or tests administered by a person of his choosing. Certainly nothing would prevent a defendant from producing his own extrapolation expert based on the test administered by the police and the tests voluntarily taken.

We have been directed to *Pence v. Commonwealth*, Ky.App., 825 S.W.2d 282 (1992), in which the Court recognized the difficulty of proving blood alcohol levels at the time of motor vehicle operation rather than at the time of testing. Nevertheless, it was conceded that for purposes of the legal analysis, intoxication was established. Painstakingly the Court noted the absence of evidence which would have established when the defendant drove the vehicle. Inferentially, if such evidence had been present, the conviction would have been sustained. In the instant case we know when the defendant last drove the vehicle. We also know that without access to any additional alcoholic beverage he had a blood alcohol concentration of .156 one hour and twelve minutes later. The necessary facts which were missing in *Pence* are present here. We have also been directed to *Timmons v. Commonwealth*, Ky., 555 S.W.2d 234 (1977), and believe its analysis should be considered here.

We do not dispute the proposition that the proof of each essential element of a crime, including the corpus delicti, must be sufficient to justify reasonable minds in finding its existence beyond a reasonable doubt. When the evidence bearing on one particular element is circumstantial, as it was in this instance, not only is it necessary, but reasonable and customary, to resort to the evidence as a whole for an assessment of the probabilities.

*Id.* at 237.

■■■ Rhetorically, we have been asked when the lapse of time between driving and testing for alcohol intoxication becomes so great as to prevent a rational trier of fact from determining guilt based thereon. In this case we need not attempt to formulate a bright line rule nor anticipate every possible state of facts which might arise. For our purposes it is sufficient to say that the evidence presented here in support of a *per se* violation easily met the "beyond reasonable doubt" standard. While a trier of fact, whether it be a trial court or a jury, may

have the power to disregard compelling evidence or impose a standard of its own which is so great as to be incapable of satisfaction, such power does not logically validate the result. Measured against proper standards of evidentiary analysis, the decision of the trial court was in error.

The law is so certified.

STEPHENS, C.J., and BAKER, GRAVES, KING, LAMBERT and STUMBO, JJ., concur.

WINTERSHEIMER, J., not sitting.