**COMMONWEALTH OF KENTUCKY, Petitioner**

v.

**Liberty Astin WALTHER, Respondent.**

**No. 2005–SC–0001–CL.**

Supreme Court of Kentucky.

April 20, 2006.

Gregory D. Stumbo, Attorney General, Frankfort, Christopher S. Nordloh, Assistant Kenton County Attorney, Covington, Counsel for Petitioner.

Harry P. Hellings, Jr., Hellings & Pisacano, PSC, Covington, Counsel for Respondent.

COOPER, Justice.

At 2:24 a.m. on June 9, 2004, Respondent Liberty Astin Walther, a Kenton County, Kentucky, deputy jailer, was operating his motor vehicle within the city limits of Fort Mitchell, Kentucky, when he was stopped by an officer of the Ft. Mitchell Police Department. Respondent was arrested and charged with a first offense of operating a motor vehicle with a blood-alcohol concentration of or above 0.08, KRS 189A.010(1)(a), or while under the influence of alcohol, KRS 189A.010(1)(b), a Class B misdemeanor. KRS 189A.010(4)(a) (fine of $200 to $500 *or* imprisonment for 48 hours to 30 days *or* both). He was also charged with careless driving, KRS 189.290, a violation. KRS 189.990(1) (fine of $20 to $100).

The Uniform Citation charging Respondent with these offenses indicates that he was stopped after the arresting officer observed him traveling 48 miles per hour in a 35 miles per hour zone, rounding a curve at an unsafe rate of speed, and drifting into the opposite lane of traffic; that after making the stop, the officer detected the odor of alcohol on or about Respondent's person; that the results of a field sobriety test were "unsatisfactory;" that Respondent admitted drinking "probably ten beers" between 8:00 p.m. and 1:30 a.m.; and that a breath-alcohol test performed by use of an Intoxilyzer 5000 breathalyzer machine measured Respondent's blood-alcohol level at 0.124.

During a bench trial held in the Kenton District Court on November 9, 2004, the Commonwealth offered evidence in the form of certified records of maintenance and tests performed by a breath-alcohol technician to prove that the machine used to test Respondent's breath, Intoxilyzer 5000 EN s/n [serial number] 68–012628, was in proper working order. Respondent objected to the admission of this evidence, and the trial judge took the issue under submission. On December 9, 2004, the trial judge entered an opinion and order suppressing the evidence in question on grounds that (1) the evidence was "testi-

monial" in nature and, thus, inadmissible under the United States Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); and (2) the evidence was "untrustworthy" because computerized printouts of tests performed on the machine by the breath-alcohol technician *prima facie* indicated that the machine was tested for accuracy at 6:09 p.m. on June 3, 2004, in Cynthiana, Harrison County, Kentucky, and again at 6:11 p.m. on the same date in Erlanger, Kenton County, Kentucky—a physical impossibility. The trial judge then dismissed both charges.[1] We granted the Commonwealth's motion to certify the following question of law:

> Can a certified copy of a breath-alcohol machine's maintenance and test records be admitted into evidence to show compliance with 500 KAR 8:020 § 2(1) without in-court testimony by the breath-alcohol technician who performed the maintenance and tests?

We answered this question in the affirmative in both *Commonwealth v. Wirth*, 936 S.W.2d 78, 82–83 (Ky.1996), and *Commonwealth v. Roberts*, 122 S.W.3d 524, 528–29 (Ky.2003). The trial judge, however, held in this case that "*Crawford* does in fact supersede the prior decisions of the Kentucky Supreme Court in *Wirth* and its progeny" on this issue.[2] We disagree.

In *Roberts*, we set forth with specificity the five foundation requirements necessary for admission of the results of a breath-alcohol test. 122 S.W.3d at 528. The first

requirement is proof "[t]hat the machine was properly checked and in proper working order at the time of conducting the test." *Id.* In that respect, 500 KAR 8:020 § 2 provides:

> (1) A breath alcohol analysis instrument shall be accurate within plus or minus 0.005 or plus or minus five (5) percent, whichever is greater, alcohol concentration units reading to be certified. To determine accuracy of instruments, a technician trained or employed by the Department of State Police shall perform analyses using a certified reference sample at regular intervals.
>
> (2) All breath alcohol analysis instruments shall be examined by a technician trained or employed by the Department of State Police prior to being placed into operation and after repairs of any malfunctions.

The evidence suppressed by the trial judge was offered to establish the first foundational requirement for admission of the breath-test results. The evidence consisted of three sets of copies of maintenance and test records pertaining to Intoxilyzer 5000 EN s/n 68–012628. Each set contained a notarized certification by Greg Blankenship, the breath-alcohol technician who prepared and had custody of them, that they were true and exact copies of the original records maintained by him and that he prepared and maintained them in the regular course of his duties as an employee of the Kentucky State Police Breath Alcohol Maintenance Program.

---

1. The audiotapes of the proceedings held on November 9 and December 9, 2004, were not made a part of the record on appeal, and the order of dismissal does not explain why the trial judge dismissed the charges of operating a motor vehicle while under the influence of alcohol, KRS 189A.010(1)(b), and careless driving, neither of which would require proof of Respondent's blood-alcohol level for conviction.

2. Judge Sheehan, who suppressed the maintenance and test records in this case, is the same district judge who suppressed similar records in *Wirth*, holding then that this type of evidence is not admissible under the business or public records exceptions to the hearsay rule. KRE 803(6); KRE 803(8). As noted, we held otherwise.

Thus, they were otherwise admissible without extrinsic evidence of authenticity, *i.e.*, additional testimony of Blankenship, under KRE 902(4) and KRE 1003.[3] The records include computer printouts of test results that, as the trial judge noted, are largely incomprehensible to a layperson. Thus, it is Blankenship's interpretation of those test results that the trial judge characterized as "testimonial."

The first set of records (Commonwealth's exhibit 2A) pertained to tests performed by Blankenship on June 3, 2004, when the machine was returned to operation after being temporarily removed to the manufacturer's Owensboro, Kentucky, plant for service and repairs.[4] In addition to the computer printouts, this set included a "Performance Work Sheet" with a printed column listing thirty-eight separate tests to be performed, an adjacent column of blank spaces with the heading "Verified," and another column of blank spaces adjacent to the second with the heading "Notes." Blankenship handwrote "OK" in the "Verified" column beside each described test. He also made three handwritten entries in the "Notes" column, writing "2339 RPM" on the line next to the test for "Motor speed;" ".083" on the line next to the test for "Calibration Check 0.080" (indicating that the calibration was within 0.005 as required by 800 KAR 8:020 § 2(1)); and "Time to time out = 3 min. & 1 sec." on the line next to the test for "No Sample Given Time NSG."

The second set of records (Commonwealth's exhibit 2B) pertained to maintenance and tests performed by Blankenship on July 8, 2004. In addition to the computer printouts, this set contains a document entitled "Breath Alcohol Instrument Service Record," on which Blankenship handwrote that the maintenance and tests were performed at Erlanger, Kenton County, and that the reasons for the tests were "routine" with a reported complaint of "cold breath tube." Blankenship also handwrote on this document under the heading "subject test," the words "OK .083 on subject test calibration check" and the following under the heading "Comments":

> Reset all tube connections. All tubes OK upon arrival. Monitored specs and settings. Changed solution. Cleaned and serviced unit as needed. Ran tests. All tests OK. Unit OK for use.

The document was signed by Blankenship and dated "7–8–04" in handwriting.

The third set of records (Commonwealth's exhibit 2C) pertained to maintenance and tests performed by Blankenship on July 15, 2004. In addition to the computer printouts, this set also contains a "Breath Alcohol Instrument Service Record," on which Blankenship handwrote that the tests were conducted at Erlanger, Kenton County, that the reasons for the tests were "routine," and that the reported complaints were "None." Blankenship also handwrote on this document under the heading "subject test," the words "OK .084 on subject test calibration check" and

---

**3.** Respondent did not object on grounds that the records were inadmissible under KRE 803(8) because they contained factual findings offered by the government in a criminal case, KRE 803(8)(C), or under KRE 803(6) because Blankenship's certification did not recite that the information contained in the records was entered "at or near the time" the information was obtained, KRE 803(6), though the contents of the records, themselves, as described *infra*, seem to indicate that they were created on site and contemporaneously with the conduct of the maintenance and/or testing.

**4.** Although the records also contain a "Certificate of Calibration" signed by an employee of the manufacturer, that fact is irrelevant to their admissibility.

the following under the heading "Comments":

> Monitored specs and settings. Changed solution. Cleaned and serviced unit as needed. No problem reported, None found. Ran standard tests. All tests OK. Unit OK for use.

The document was signed by Blankenship and dated "7–15–04" in handwriting.

In *Crawford v. Washington,* the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment to the United States Constitution does not permit the use of court-created hearsay exceptions or other tests of "reliability," *e.g.,* the "particularized guarantees of trustworthiness" articulated in *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), to admit testimonial hearsay statements against a defendant at a criminal trial unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374. The Commonwealth does not assert either that Blankenship was unavailable for trial or that Respondent had a prior opportunity to cross-examine him. Thus, the only issue is whether the notations Blankenship made in the documents reflecting his maintenance and the results of his tests on the Intoxilyzer machine were "testimonial." To provide guidance in making this determination, the U.S. Supreme Court explained:

> The text of the Confrontation Clause ... applies to "witnesses" against the accused—in other words, those who "bear testimony." "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Id.* at 51, 124 S.Ct. at 1364 (citations omitted).

The Court also stated that, at a minimum, the term "testimonial" applies to police interrogations and to prior testimony, whether at a preliminary hearing, before a grand jury, or at a formal trial. *Id.* at 68, 124 S.Ct. at 1374. Because the statement at issue in *Crawford* was a statement given to the police during a custodial interrogation, "testimonial under any definition," *Id.* at 61, 124 S.Ct. at 1370, the Court "[left] for another day any effort to spell out a comprehensive definition of 'testimonial.' " *Id.* at 68, 124 S.Ct. at 1374. However, it did endorse the view that statements were testimonial, if, *e.g.,* they "were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." *Id.* at 52, 124 S.Ct. at 1364. Applying his well-documented "originalist" view of constitutional interpretation,[5] *i.e.,* that the Constitution must be interpreted today as the Framer's originally understood it,[6] Justice Scalia, the author of *Crawford,* noted therein that several hearsay exceptions were well established by 1791, "most of [which] covered statements that by their nature were not testimonial—for example, *business records* or statements in furtherance of a conspiracy." *Id.* at 56, 124 S.Ct. at 1367 (emphasis added).[7]

---

5. *E.g.,* Antonin Scalia, *Originalism: The Lesser Evil,* 57 U. Cin. L.Rev. 849, 862 (1989).

6. *Id.* at 851–52.

7. Justice Scalia also somewhat reluctantly acknowledged that the exception for dying declarations was established before 1791, but stated that "[i]f this exception must be accepted on historical grounds, it is *sui generis.*" *Id.* at 56 n. 6, 124 S.Ct. at 1367 n. 6.

Every jurisdiction but one that has considered this issue since *Crawford* has concluded that maintenance and performance test records of breath-analysis instruments are not testimonial, thus their admissibility is not governed by *Crawford. Bohsancurt v. Eisenberg,* 212 Ariz. 182, 129 P.3d 471, 480 (Ct.App.2006); *Rackoff v. State,* 275 Ga.App. 737, 621 S.E.2d 841, 845 (2005); *Napier v. State,* 827 N.E.2d 565, 569 (Ind. Ct.App.2005); *State v. Carter,* 326 Mont. 427, 114 P.3d 1001, 1007 (2005); *State v. Godshalk,* 381 N.J.Super. 326, 885 A.2d 969, 973 (Law Div.2005); *Green v. DeMarco,* 11 Misc.3d 451, 462–63, 812 N.Y.S.2d 772, 780–81 (N.Y.Sup.Ct.2005); *State v. Norman,* 203 Or.App. 1, 125 P.3d 15, 18–19 (2005); *Luginbyhl v. Commonwealth,* 46 Va.App. 460, 618 S.E.2d 347, 354–55 (2005); *contra Shiver v. State,* 900 So.2d 615, 618 (Fla.Dist.Ct.App.2005).

We have no difficulty aligning our jurisdiction with this substantial majority. Blankenship did not make the notations in question for the purpose of proving Respondent's guilt. *Napier,* 827 N.E.2d at 569. He did not accuse Respondent of any wrongdoing. *Luginbyhl,* 618 S.E.2d at 354. A properly operating breathalyzer instrument could just as well prove innocence as guilt. Thus, Blankenship was not "bear[ing] testimony" against Respondent. *Crawford,* 541 U.S. at 51, 124 S.Ct. at 1364. His notations pertained only to whether certain tests were performed, the results of those tests, and whether the machine should continue in use or be referred to the manufacturer for repairs. The notations were made for quality control purposes and were used at trial only to establish one of the foundational requirements for admission of Respondent's breath-test result. *Carter,* 114 P.3d at 1005–06. Blankenship probably knows when he prepares his maintenance and test records that the information contained therein might be used at a trial (though probably not which trials). However, the fact that the records have an incidental use in court as evidence of the reliability of the machine during a particular time frame does not alter the fact that the records have a primary business purpose that would exist, *i.e.,* to assure compliance with 500 KAR 8:020 § 2, even in the absence of this litigation. *Green,* 11 Misc.3d 451, 462–63, 812 N.Y.S.2d at 780–81. As observed by the Court of Appeals of Oregon:

[T]he certifications in this case do not resemble the classic kind of testimonial evidence at which the Confrontation Clause was aimed—*ex parte* examinations of witnesses intended to be used to convict a particular defendant of a crime. Rather, the certifications are evidence about the accuracy of a test result arrived at by a machine. They were created by state employees in the course of carrying out routine ministerial duties required by statute and administrative rule to certify the accuracy of test results of Intoxilyzer machines....

.... [The technicians] were merely ensuring that the machines operated properly and provided accurate readings before and after defendant's test result was obtained. Unlike police or prosecutorial interrogators, the technicians have no demonstrable interest in whether the certifications produce evidence that is favorable or adverse to a particular defendant.

*Norman,* 125 P.3d at 18–19.

We conclude that the notations contained in Blankenship's reports were not testimonial, thus their admission into evidence was neither governed nor affected by the holding in *Crawford.*

The law is so certified.

All concur.