NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0502n.06

Case No. 18-6350

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| | | **FILED** |
| | | Oct 03, 2019 |
| UNITED STATES OF AMERICA, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| RONNIE LYNARD MORROW, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GUY, BUSH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. After three prior drug-related violations of supervised release, Ronnie Morrow crashed his car twice within a week (first into oncoming traffic, then into a building). He failed field sobriety tests after each crash and both times was arrested for driving under the influence. The district court revoked his supervised release for a fourth time and imposed a 24-month prison sentence. Morrow brings procedural and evidentiary challenges to this revocation, along with a sentencing challenge to his above-guidelines sentence. We affirm.

I.

In 2006, Morrow pleaded guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). Three years later, he pleaded guilty to possessing marijuana in prison, a violation of 18 U.S.C. § 1791(a)(2). These offenses carried three-year terms of supervised release.

Morrow's supervised release began in March 2014. It has not gone well. His first revocation stemmed from the use of marijuana and the failure to comply with various other terms of his supervised release. He received eight months in prison, followed by 28 months of supervised release. His second revocation, for the use of a sleeping pill containing a controlled substance, earned him seven months in prison and 12 months of supervised release. His third revocation, for possession of a synthetic drug, led to 13 months of imprisonment and eight months of supervised release.

In March 2018, a few months after his latest release from prison, Kentucky police arrested Morrow for driving under the influence twice within a week. Morrow's probation officer initiated revocation proceedings, citing his arrests for violating Kentucky's DUI statute.

A magistrate judge held a hearing. Blood analyses after each arrest revealed no controlled substances, and a urine sample collected in between the two arrests also tested negative for drugs. Yet David Golz, a representative from the lab that screened Morrow's urine, testified that the screens would not have detected several drugs, including the synthetic drug that Morrow possessed before his third supervised-release revocation. (The blood tests did not screen for that drug either.) Officer Tanner Abbott, who arrested Morrow on March 15, next testified that Morrow's car had been in the left-hand turn lane, but had driven into oncoming traffic instead of turning. Morrow appeared intoxicated, failed field sobriety tests, and said that he had no medical issues that would explain his disoriented state. Officer Christopher Gates, who arrested Morrow on March 20, testified that he was dispatched after a 911 call reported that a car had driven into a building. He saw Morrow at the scene leaning against the car's passenger side. Morrow appeared intoxicated because of his unsteady feet and slurred speech, again failed field sobriety tests, and again denied

2

having any medical issues that would explain his state. After both arrests, Morrow confidently told the officers that he wanted a blood test because it would come back negative.

The magistrate judge recommended that the district court find by a preponderance of the evidence that Morrow violated Kentucky Revised Statute § 189A.010(1)(c), which prohibits driving "[w]hile under the influence of any . . . substance or combination of substances which impairs one's driving ability." The judge proposed a sentence of 24 months' imprisonment, which was 10 months above the applicable guidelines range.

Morrow objected. At a hearing before the district judge, he testified for the first time that blood-pressure problems (not drugs) caused his erratic driving. Reviewing this new evidence along with the magistrate judge's recommendation, the district court concluded that Morrow had violated Kentucky law and revoked his supervised release. The court imposed a 24-month sentence.

## II.

Morrow brings three challenges on appeal: a procedural challenge, an evidentiary challenge, and a sentencing challenge.

1. *Procedural Challenge*. Morrow argues that his supervised-release revocation failed to follow procedures required by due process. The Supreme Court has held that "revocation proceedings . . . are subject only to 'minimum requirements of due process,' which are less demanding than the procedural protections that normally accompany criminal trials." *United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Disclaiming the authority to "write a code of procedure" in the name of due process, the Court has nonetheless held that the Due Process Clause requires revocation proceedings to follow a list of procedures. *Morrissey*, 408 U.S. at 488–89. Among the minimum

required procedures are "written notice of the claimed violations," "disclosure to the [defendant]" of the government's evidence, and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." *Id.* at 489. These protections have now largely been codified in Federal Rule of Criminal Procedure 32.1.

Morrow alleges three violations of these procedural protections.

*First*, Morrow argues that the government violated his right to "written notice of the alleged violation." Fed. R. Crim. P. 32.1(b)(2)(A). He claims that the probation officer's two notices (one for each violation) did not include enough information because they cited a subsection of Kentucky's DUI statute (Ky. Rev. Stat. § 189A.010(5)(a)) that lists the *penalties* for violations rather than the *prohibition* that he violated. Yet a written notice "need only assure that the defendant understands the nature of the alleged violation." *United States v. Sistrunk*, 612 F.3d 988, 992 (8th Cir. 2010); *see United States v. Lee*, 795 F.3d 682, 686 (7th Cir. 2015). The notices in this case did so. They alleged that Morrow had violated Kentucky law by operating a motor vehicle under the influence on March 15 and March 20, 2018. And they described Morrow's arrests for violations of Kentucky Revised Statute "§ 189A.010(5A)—a Class B Misdemeanor." Each notice included a copy of the respective police citation and referred to the state case. And while § 189A.010(5)(a) indeed sets forth penalties, it also connects those penalties back to offenses: violations of "subsection (1) of this section." Ky. Rev. Stat. § 189A.010(5).

*Second*, Morrow argues that the government failed to disclose two pieces of evidence that it used at the revocation hearing: the testimony of Golz (the representative from the lab that tested his urine) and an accident report from the March 15 crash that Officer Abbott investigated. His argument fails on other grounds, but we pause to mention an uncertainty in the law. Federal Rule

4

of Criminal Procedure 32.1(b)(2)(B) notes that a person "is entitled to" "disclosure of the evidence against the person." *Morrissey* likewise identifies a right of "disclosure to the [person] of evidence against him." 408 U.S. at 489. Neither the rule nor the case says *when* the government must make this disclosure. At the revocation hearing? The day before? A month before? Here, Morrow obviously received notice of this evidence when the government introduced it at the hearing before the *magistrate judge*, which was months before the *district court's* decision to revoke his supervised release. In between, the court permitted Morrow to supplement the record with additional evidence. Under these circumstances, we doubt that the government would have violated due process (or Rule 32.1(b)(2)(B)) even if it failed to adequately disclose this evidence until the initial hearing.

Regardless, we see no abuse of discretion in the decision to overrule Morrow's objections about the lack of *prehearing* disclosures. *Cf. United States v. Cotroneo*, 89 F.3d 510, 514 & n.7 (8th Cir. 1996). As for Golz's testimony, Morrow's counsel apparently did not learn that he would testify until the day before the hearing, so counsel filed a motion to exclude the testimony. At the hearing, however, counsel conceded that the court should not *entirely* exclude Golz's testimony because it addressed the urine test results that counsel had received. The magistrate judge denied Morrow's motion as moot "without prejudice to [his] right to object to any particular question" falling outside the scope of the prehearing disclosures. Morrow did not object to *any* question on those grounds. In these circumstances, the district court did not err in allowing all of Golz's testimony.

As for the accident report, the government did not introduce the report during its direct examination of Officer Abbott. Instead, Officer Abbott first referred to the report in response to defense counsel's questions, which seemed to be premised on a statement contained within it.

Morrow's counsel sought to establish that Officer Abbott neither saw Morrow driving the car nor asked Morrow if he had been driving. The magistrate judge allowed the government to clarify this issue by admitting the report "for the limited purpose of showing why Officer Abbott failed to inquire further who was driving": because another officer asked Morrow that question, and Morrow admitted that he had been driving. Given this limited purpose, we need not reach the merits of Morrow's disclosure-related objections to this report because, as explained immediately below in response to a related challenge, its admission was harmless.

*Third*, Morrow argues that the district court's admission of this report also prohibited him from "question[ing] . . . adverse witness[es]," Fed. R. Crim. P. 32.1(b)(2)(B), because the report contained hearsay from a non-testifying officer and non-testifying eyewitnesses. We do not reach the merits of this claim because the report could not have affected the outcome.

Harmless-error review applies to violations of Rule 32.1. *See* Fed. R. Crim. P. 52(a). Yet some uncertainty exists over the governing harmless-error standard because the *procedural rule* codifies *constitutional guarantees*. *See United States v. Jackson*, 422 F. App'x 408, 410 (6th Cir. 2011); Fed. R. Crim. P. 32.1, Advisory Committee Notes to 1979 and 2002 Amendments. "[T]he distinction between constitutional and nonconstitutional error can be quite important, since the standards for testing whether such errors are harmless are different." *United States v. Evans*, 216 F.3d 80, 89 (D.C. Cir. 2000). For nonconstitutional errors, the government must show by a preponderance of the evidence that the error did not have a "substantial and injurious effect or influence in" the outcome. *Kotteakos v. United States*, 328 U.S. 750, 776 (1946); *see also United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015). Constitutional errors, by contrast, require a showing "beyond a reasonable doubt that the error did not affect the" outcome. *Kilpatrick*, 798 F.3d at 378 (emphases omitted); *Chapman v. California*, 386 U.S. 18, 24 (1967).

So which standard applies?  Our published precedent says little on this point.  At least two circuits have held that the *Kotteakos* standard applies.  *United States v. Rodriguez*, 919 F.3d 629, 636 (1st Cir. 2019); *United States v. Ferguson*, 752 F.3d 613, 618 (4th Cir. 2014).  But some judges have advocated for *Chapman* in this context.  *See Ferguson*, 752 F.3d at 621–22 (Keenan, J., dissenting).  Or maybe *Kotteakos* should apply when a defendant raises an objection under the rule, but *Chapman* should apply when the defendant raises a (similar) objection under the Constitution.

We can reserve the answer to this question.  *Cf. United States v. Jones*, 818 F.3d 1091, 1101 (10th Cir. 2016).  Any error in admitting the accident report was harmless under either standard.  At the hearing before the magistrate judge, Morrow disputed that he had been driving the car that caused the crash.  At the final hearing before the district judge, however, he *testified* that he was the driver.  Any error in admitting the report was undoubtedly harmless because the report shed light on an element that Morrow conceded by the time the district court ruled.  *See Kokoski*, 435 F. App'x at 475–76.

2. *Evidentiary Challenge*.  Morrow next argues that the district court wrongly found that his impaired driving resulted from a "substance," Ky. Rev. Stat. § 189A.010(1)(c), as opposed to an innocuous cause like "fatigue or illness."  His argument faces a tough standard of review.  The district court may "revoke a term of supervised release" if it "finds by a preponderance of the evidence that the defendant violated a condition of [that] release."  18 U.S.C. § 3583(e)(3).  The statute thus "requires a lesser quantum of proof and enables the trier of fact to make a determination of guilt that it could not make if the standard were that at trial, i.e., guilt beyond a reasonable doubt."  *United States v. Thompson*, 314 F. App'x 797, 799 (6th Cir. 2008) (per curiam).  And we review the factual findings underlying a conclusion that a defendant violated the terms of

supervised release for clear error. *United States v. Kontrol*, 554 F.3d 1089, 1092 (6th Cir. 2009); *see also United States v. Hughes*, 604 F. App'x 448, 453 (6th Cir. 2015).

Here, the district court did not clearly err in finding that Morrow's reckless driving arose from his use of impairing substances. Ky. Rev. Stat. § 189A.010(1)(c). Morrow twice crashed his car: into oncoming traffic on March 15 and into a building on March 20. After both crashes, officers believed Morrow to be under the influence of an impairing substance because he failed field sobriety tests and denied having medical issues that could explain his condition. After the second crash—into a building known for drug activity—Morrow was so unsteady that the officer had to stop the sobriety tests for Morrow's safety. And while Morrow passed drug tests, the tests would not have detected the presence of many drugs, including a synthetic drug that Morrow had previously possessed.

Morrow challenges the district court's finding in several ways. He initially points out that the government relied on the officers' testimony rather than scientific tests. Under Kentucky law, however, "a DUI conviction [can] be sustained without evidence procured by use of a device for measuring intoxication," *Commonwealth v. Wirth*, 936 S.W.2d 78, 81 (Ky. 1996), and thus may "stand upon the testimony of the police," *Allen v. Commonwealth*, 817 S.W.2d 458, 461 (Ky. Ct. App. 1991).

That may be so, Morrow responds, but the district court should not have credited the officers' testimony *in this case* because of various inconsistencies. Yet "the credibility of witnesses is in the province of the factfinder and [we] will not ordinarily review the factfinder's determination of credibility." *United States v. Webster*, 426 F. App'x 406, 411 (6th Cir. 2011) (alteration in original) (quoting *United States v. Copeland*, 20 F.3d 412, 413 (11th Cir. 1994)). Morrow's parsing of the officers' testimony—criticizing Officer Abbott, for example, because he

8

was not clear over whether he or another officer had asked Morrow if he had been driving the car—does not justify a departure from that ordinary rule.

Morrow lastly challenges the district court's failure to identify the specific "substance" that caused his impairment. This argument, too, conflicts with Kentucky law. Even under the beyond-a-reasonable-doubt standard, it allows a criminal conviction to rest on police officers' lay opinions about a defendant's impaired state (even if they do not identify the specific substance that caused the defendant's impairment). *See Allen*, 817 S.W.2d at 461.

3. *Sentencing Challenge*. Morrow claims that the district court imposed a substantively unreasonable 24-month sentence. When reviewing a sentence imposed after the revocation of supervised release, we apply the same abuse-of-discretion standard that governs a sentence imposed after a conviction. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008). For sentences outside the guidelines range, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

Morrow's sentence, which exceeded the top end of his guidelines range by 10 months, was not "too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). The district court highlighted several factors justifying the sentence: Morrow had three prior revocations; the court had granted a downward variance at his last revocation; his current violations posed serious risks to the public; and the court could not impose another period of supervised release. These are "legitimate grounds for this variance." *Kokoski*, 435 F. App'x at 477 (repeat violations); *see also United States v. Visage*, 530 F. App'x 411, 412 (6th Cir. 2013) (per curiam) (public safety); *United States v. Skaggs*, 726 F. App'x 411, 416 (6th Cir. 2018) (breach of trust).

In response, Morrow argues that the court overemphasized Morrow's breach of its trust and its prior downward departure at the last revocation proceeding. But the Sentencing Guidelines do not account for "whether a defendant has violated his supervised release one time or many," so "it may be reasonable for a district court to vary upward when sentencing an offender who commits repeated supervised-release violations." *United States v. Wells*, 443 F. App'x 997, 998 (6th Cir. 2011). Regardless, the court cited additional factors, including that Morrow's impaired driving had caused a head-on collision with another car.

We affirm.